AMERICAN ANTHRACITE & BITUMI-
NOUS COAL CORP., Appellee,

v.

LEONARDO ARRIVABENE, S.A., Tramp
Tankers Corporation of Liberia and Es-
tate of Hector C. Dracoulis, Appellants.

No. 91, Docket 25735.

United States Court of Appeals
Second Circuit.

Argued Dec. 9, 1959.

Decided June 13, 1960.

Sydney Basil Levy, New York City (Chauncey H. Levy, New York City, on the brief), for appellee.

Humphrey Statter, New York City (Daniel L. Smith, Jr., Cardillo & Smith, New York City, on the brief), for appellant, Leonardo Arrivabene, S.A.

James E. Freehill, New York City (Francis P. Kelly, Hill, Betts & Nash, New York City, on the brief), for appellants, Tramp Tankers Corporation of Liberia and Estate of Hector C. Dracoulis.

Before LUMBARD, Chief Judge, and SWAN and FRIENDLY, Circuit Judges.

LUMBARD, Chief Judge.

Leonardo Arrivabene, S.A., Tramp Tankers Corporation of Liberia, and the Estate of Hector Dracoulis, three creditors of American Anthracite & Bituminous Coal Corporation, the debtor in a proceeding for an arrangement pursuant to Chapter XI of the Bankruptcy Act, appeal from a decision of the district court denying priority under § 64, sub. a(1) of the Act, 11 U.S.C.A. § 104, sub. a(1), to their claims for freight and demurrage. The appellants argue that these claims are entitled to priority either as "costs and expenses of administration" or as "actual and necessary costs and expenses of preserving the estate." We agree with the district court and with the referee that these claims are not entitled to priority and affirm the order.

At the threshold the appellants challenge the standing of the debtor to object to the priority status accorded their claims by the order confirming the arrangement. They point out that under

§ 367(3) of the Bankruptcy Act, 11 U.S.C.A. § 767(3), none of the $2,000,000 deposited by the debtor for distribution to its creditors may be returned to it under any circumstances and argue that the debtor is therefore not a "part[y] in interest" entitled to object to the allowance of claims under § 57, sub. d, 11 U.S.C.A. § 93, sub. d, even in the absence of a trustee in bankruptcy. We do not agree.

■ First, it is settled that under § 2, sub. a(2), 11 U.S.C.A. § 11, sub. a(2), and under § 57, sub. k, the referee upon his own motion may reconsider the allowance or status of a claim. In re Owl Drug Co., 9 Cir., 1936, 84 F.2d 342; In re Noble, D.C.W.D.N.Y.1936, 15 F.Supp. 648. Since the referee may act without the filing of an objection by anyone, his power surely cannot be diminished because the debtor suggests the reconsideration.

■ Second, § 342 of the Act, 11 U.S.C.A. § 742, states that the debtor in possession shall "exercise all the powers of a trustee appointed under this title." A trustee has the power, indeed the duty as representative of all the creditors, to object to the allowance of improper claims. Section 342 should be understood as authorizing the debtor in possession to exercise this same power. See In re Martin Custom Made Tires Corp., 2 Cir., 1939, 108 F.2d 172; In re Ankeny, D.C. N.D. Iowa 1900, 100 F. 614.

■ Third, General Order 21(6) of the General Orders in Bankruptcy, 11 U.S.C.A. following § 53, as amended by the Supreme Court in 1933 (see 288 U.S. 628), specifically permits "the bankrupt or debtor," as well as the trustee or any creditor, to petition for "reconsideration of any claim allowed against the estate." This Order is expository of § 57, sub. d, see In the Matter of Woodmar Realty Co., 7 Cir., 1957, 241 F.2d 768, 64 A.L.R.2d 883, and constitutes a recognition of the fact that a debtor, particularly one who anticipates that his business will continue after reorganization, has a real interest in seeing that his assets are distributed equitably among his creditors in accordance with the bankruptcy law. As this Court has stated, it was the purpose of the 1933 amendment of General Order 21(6) to give to the bankrupt or the debtor standing to petition for reconsideration of the claims of creditors. In re Povill, 2 Cir., 1939, 105 F.2d 157. In re Munsie, 2 Cir., 1929, 33 F.2d 79 and Gregg Grain Co. v. Walker Grain Co., 5 Cir., 1922, 285 F. 156, certiorari denied, 1923, 262 U.S. 746, 43 S.Ct. 522, 67 L.Ed. 1212, decided prior to the 1933 amendment, are no longer authority.

■ Though General Order 21(6) by its terms refers only to reconsideration of claims which "ought to be expunged or diminished," application of the Order is not so restricted. There is no rational basis for supposing that the draftsmen of the Order wished to permit petitions for reconsideration of a claim in order to reduce it, but not in order to increase it or alter its priority. The Order is intended to have a meaning broad enough to permit reconsideration of claims of all kinds. Castaner v. Mora, 1 Cir., 1956, 234 F.2d 710, 714; In re Cury, D.C.W.D.Va.1940, 34 F.Supp. 526. We conclude that the debtor's petition for reconsideration of appellants' claims to priority was properly entertained by the referee.

The claim of appellant Arrivabene to priority is founded upon its asserted rights under a contract with the debtor and the debtor in possession approved by the referee on October 31, 1957, ten days after the filing of the debtor's petition for an arrangement under Chapter XI. Previously, in accordance with a charter party between Arrivabene and Anthracite, the vessel Praglia was tendered to the debtor by Arrivabene on August 23, 1957 for the carriage of a cargo of coal from Norfolk, Virginia, to Rijeka, Yugoslavia. The ship was not loaded by the debtor until October 1, by which time demurrage charges of $22,198.75 had accrued, and both this sum and freight of $108,810.90 became payable by the debtor on October 8. Upon the debtor's failure to make payment Arrivabene notified

Anthracite that it intended to exercise the lien granted it upon the cargo by the charter party. However, subsequent to the filing of the debtor's petition for an arrangement on October 21, and without exercising its lien, Arrivabene entered into a contract with the debtor and debtor in possession under which it released its lien in exchange for an immediate payment of $78,844.27, the sub-freight due the debtor from a sub-charterer of the Praglia, and a claim for the unpaid balance of $52,105.38. It is the status of the claim for this unpaid balance that is at issue here.

■ Arrivabene concedes that whatever preferential rights it had, at the time the debtor filed the petition for an arrangement, by reason of its lien upon the cargo were extinguished by the October 31 contract and that the present rights of the parties are to be determined by the terms of this contract. But it argues that it was the intention of the parties as manifested in the contract to accord priority to Arrivabene's claim for the unpaid amount. To support this position it points out that contractual obligations undertaken by a trustee or debtor in possession in the course of management of the bankrupt's estate are usually held to have priority and, second, that it would be unreasonable to suppose that a claimant would relinquish a lien upon which full payment could be realized without obtaining priority for any deficiency above and beyond the cash immediately obtained from the debtor.

The contract of October 31 is clear in its terms and precludes the interpretation that the appellant urges. Paragraph 5 of the contract states:

"This agreement is without prejudice to any claim which the owner may assert against charterer in respect to the differences between the amount of freight accepted in accordance with this agreement [the sub-freight of $78,844.27 due the debtor], and such amounts as owner may be entitled to receive pursuant to Charter Party dated June 9, 1956, including freight and demurrage."

No mention whatever is made of any priority status to be accorded Arrivabene's unpaid claim, and there is no suggestion elsewhere in the agreement that the claim was to be other than a general one. Moreover, paragraph 6 states unequivocally that the contract shall not be deemed an affirmance by the debtor in possession of the unexecuted portion of the charter party between Arrivabene and the debtor, upon which a claim to priority would customarily be founded. Nor does it seem unreasonable or improbable that a creditor would choose to accept an immediate cash payment of 60% of its claim and a general claim against the debtor's estate for the balance in exchange for its right to execute upon a maritime lien in a distant country. Even if we were to accept Arrivabene's statement that the market value of the coal delivered in Yugoslavia was substantially in excess of the amount due it for freight and demurrage, we cannot ignore the fact that substantial expenses, delays, and hazards might be encountered in enforcing a cargo lien in Yugoslavia.

■ Were there any uncertainty as to the proper interpretation to be put upon the October 31 contract, the petition of the debtor in possession, submitted to the referee simultaneously with the contract and seeking approval of it, would remove any doubt. The petition states that "the proposal in essence provides for the payment of less than all of a valid subsisting lien, but with a waiver of the rights to enforce said lien, leaving the owner in the status of a general creditor as to the difference between the proposed payment and the amount of said owner's total claims." We must assume that the referee in deciding to approve the contract understood the petition to correctly state its meaning. Arrivabene argues, nonetheless, that it should not be bound by the statements of the petition, since neither its officers nor its counsel saw the petition prior to approval of the contract. Although it is true that appellant did not see the petition on October 31, Arrivabene admits in its brief that it received

copy of the petition on November 4, a week before the Praglia docked in Yugoslavia. If Arrivabene thought the petition of the debtor erroneously stated the effect of the contract upon the rights of the parties, it had ample opportunity to bring its view to the referee's attention and obtain rescission or amendment of the contract prior to the unloading of the Praglia. Having elected to do nothing, Arrivabene cannot now disavow knowledge of the referee's and the debtor's understanding of the contract.

The claims of appellants Tramp Tankers Corporation and the Estate of Hector Dracoulis are based upon facts and present legal issues which are substantially identical. Previous to the filing of its petition for an arrangement on October 21, 1957, the debtor had entered into a charter party with each appellant. In accordance with the charters, the vessel Archanax was tendered to the debtor by Tramp Tankers and the vessel Calliope by Dracoulis early in October, 1957. The debtor failed to obtain a cargo for either vessel and both ships stood empty at the loading ports until November 16, 1957, when pursuant to a stipulation between the ship owners and the debtor in possession, the vessels were released for charter to other parties. On November 29, 1957, the debtor in possession filed a petition for an order authorizing it to reject both charters with the appellants, and on January 2, 1958, the referee approved the rejection. Tramp Tankers thereafter filed claims seeking priority for demurrage charges of $4,403 accrued prior to the filing of the debtor's petition for an arrangement and $23,037 accrued between October 21 and the release of its ship under the stipulation in mid-November. Tramp Tankers also sought priority with respect to a claim for $1,037.54 for stevedoring damages accruing prior to the filing of the debtor's petition. Dracoulis sought priority as to its claim for post-petition demurrage of $27,000. Subsequently, it also sought and was denied leave to amend its claim to include a request for priority with respect to pre-petition demurrage of $11,000. The referee denied all of appellants' requests for priority and ruled that their claims were entitled only to general creditor status; the district court agreed. D.C.S.D.N.Y. 1959, 171 F.Supp. 377.

The right to priority in Chapter XI proceedings is governed solely by § 64 of the Bankruptcy Act. See § 302, 11 U.S.C.A. § 702; 8 Collier on Bankruptcy Para. 5.33 (14th Ed. 1941). Section 64, sub. a(1) includes among those claims entitled to first priority "the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition" and "the costs and expenses of administration." The claim of a creditor having an executory contract with the debtor at the time the debtor's petition is filed is entitled to priority under these provisions only if the trustee or debtor in possession elects to assume the contract or if he receives benefits under it. The right to priority in the event the contract is assumed follows from the fact that the trustee or debtor in possession has elected to make the contract of the debtor his own, just as if it had been made by the trustee or debtor in possession in the first instance. The right to priority in the event the trustee or debtor in possession receives benefits under the contract during the interval between the filing of the debtor's petition and the rejection of the contract "is an equitable right based upon the reasonable value" of the benefits conferred, rather than upon the contract price. In re United Cigar Stores Co., 2 Cir., 69 F.2d 513, 515, certiorari denied sub nom. Reisenwebers, Inc. v. Irving Trust Co., 1934, 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665; see Oscar Heineman Corp. v. Nat Levy & Co., 2 Cir., 1925, 6 F.2d 970, 43 A.L.R. 727; Gardner v. Gleason, 1 Cir., 1919, 259 F. 755. Where no benefits are received by the bankrupt estate or its representative under the contract, and the contract is not assumed, the creditor's claim is not entitled to priority, Petition of Colburn, 1 Cir., 1926, 16 F.2d 780; In re No Care Elec. Radiator Corp., D.C.S.D.N.Y.1933, 3 F.Supp. 331, although of course, upon rejection, the

creditor may file a general claim against the estate. See §§ 63, sub. a(9), 353, 11 U.S.C.A. §§ 103, sub. a(9), 753.

These principles have most often been applied by the courts with respect to leases of real property. In such cases it is said that, unless the trustee or debtor in possession elects to assume the duties of the bankrupt lessee under the lease, he is liable only for actual use and occupancy of the property. City of Fort Lauderdale v. Freeman, 5 Cir., 1954, 217 F.2d 600; Wiemeyer v. Koch, 8 Cir., 1945, 152 F.2d 230; In re McCrory Stores Corp., 2 Cir., 1934, 69 F.2d 517; In re United Cigar Stores Co., supra; Irving Trust Co. v. Densmore, 9 Cir., 1933, 66 F.2d 21; Meehan v. King, 1 Cir., 1932, 54 F.2d 761; cf. Central Manhattan Properties, Inc. v. D. A. Schulte, Inc., 2 Cir., 91 F.2d 728, certiorari denied, 1937, 302 U.S. 743, 58 S.Ct. 145, 82 L.Ed. 575. Constructive possession by the trustee or his collection of sub-rents for remission to the lessor, In re United Cigar Stores Co., supra, or even actual possession by the bankrupt, Petition of Colburn, supra, is not sufficient to warrant a grant of priority to the lessor's claim.

In order to bring their claim within these principles, appellants argue, first, that the right to priority extends, in appropriate circumstances, to leases of personal as well as real property, and, second, that the debtor in possession in the case before us actually, or at least potentially, benefited from the presence and immediate availability of their ships at dockside. Appellants point out that during the period between the filing of the debtor's petition on October 21 and the signing of the stipulation releasing the vessels in the middle of November they were in a helpless position, unable either to obtain repossession of their ships under the charter parties or to compel the debtor in possession to make an instantaneous decision to assume or reject the charters. We agree with appellants' first argument.

■ No rational basis exists for drawing a distinction between the right to priority where contracts for the lease of real property are concerned and that right where other kinds of contracts are involved. It is true that § 306(4), 11 U.S.C.A. § 706(4), defines "'executory contracts'" to "include unexpired leases of real property." But the word "include" does not carry the negative implication that all other classes are excluded. Rather, the explanation for this phrasing of the definition of "executory contracts" lies in the historical development of the Bankruptcy Law, and was not intended to limit the character of the contracts that might come within it. See Matter of Cheney Bros., D.C.D.Conn. 1935, 12 F.Supp. 605; 6 Collier on Bankruptcy Para. 3.23 [1] at 678 and n. 6 (14th Ed. 1947). Moreover, priority has in fact been accorded to claims for use by the trustee of personal property leased to the bankrupt. Mathews v. Butte Machinery Co., 9 Cir., 1923, 286 F. 801.

■ With appellants' second argument we cannot agree. It may be true, as appellants contend, that there need be no physical use of the creditor's property by the trustee or debtor in possession in order that a claim for priority may be allowed, so long as some benefit is conferred upon the estate. The Sixth Circuit so held in Dayton Hydraulic Co. v. Felsenthall, 1902, 116 F. 961. There the bankrupt had leased certain industrial real estate to prevent his competitors from making use of it, but had not actually entered into possession of the property himself. The court held that the trustee's continued retention of the leasehold for this purpose without entering into possession and without assumption of the lease, constituted the receipt of the benefits of the lease and therefore granted priority to the lessor's claim. But we have distinguished the Dayton Hydraulic situation from those where a trustee has benefited only from the use of part of a leasehold, even though he was in constructive possession of the entire premises, In re United Cigar Stores Co., supra; see also Meehan v. King, supra, and the lessor was unable to reenter prior to rejection of the lease. In re Chambers, Calder & Co., D.C.

D.R.I.1900, 98 F. 865; see also In re United Cigar Stores Co., 2 Cir., 1937, 89 F.2d 3, 6; In re Lombardy Inn Co., D.C.D.Mass.1919, 266 F. 394. Indeed, it is most apparent from those cases which hold that the measure of compensation to which the lessor is entitled is not the amount due under the contract or lease but the fair value of the benefit conferred upon the estate that the purpose of according priority in these cases is fulfillment of the equitable principle of preventing unjust enrichment of the debtor's estate, rather than the compensation of the creditor for the loss to him. See Gardner v. Gleason, supra; In re Adams Cloak, Suit & Fur House, D.C.D.Mass. 1912, 199 F. 337; see also Kneeland v. American Loan and Trust Co., 1890, 136 U.S. 89, 103, 10 S.Ct. 950, 34 L.Ed. 379. But cf. In re Millard's, Inc., 7 Cir., 1930, 41 F.2d 498.

Here the only benefit conferred upon the debtor in possession by the presence of the appellants' ships for the period between the filing of the petition and the rejection was the value of the option either to accept or reject the charter. The same sort of benefit would be realized in the case of a lease of real property not occupied by the debtor; yet in exactly such a situation we denied any priority, In re United Cigar Stores Co., 2 Cir., 69 F.2d 513, certiorari denied sub nom. Reisenwebers, Inc. v. Irving Trust Co., 1934, 293 U.S. 566, 55 S.Ct. 76, 79 L.Ed. 665. It is true that this may place certain contract creditors in an "equivocal position," In re Greenpoint Metallic Bed Co., 2 Cir., 1940, 113 F.2d 881, where they are obliged to keep their property or services available for the debtor for a brief period and obtain no more than a general claim for what they have lost in the interval. However, this hardship must be weighed against the serious effect on other creditors of obliging the trustee or debtor in possession to make an immediate decision to reject or affirm, at a time when he is surrounded with all the problems incident to the early days of a bankruptcy proceeding, on pain of exposing the estate to possibly heavy priority claims for each day of delay. We think Congress' assessment of the relative weight to be accorded these competing considerations is reflected in the Chandler Act amendment of § 70, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b, directing that "Within sixty days after the adjudication, the trustee shall assume or reject any executory contract, including unexpired leases of real property: *Provided, however,* That the court may for cause shown extend or reduce such period of time." Although the sixty-day limitation of Section 70, sub. b is not specifically applicable to Chapter XI proceedings, still it was open to appellants to move for an immediate affirmance or rejection; having failed to do this, they cannot be heard to argue it was inconceivable the court would have listened to them if they had. Moreover, in § 70, sub. b Congress reaffirmed another means whereby persons like appellants can protect themselves, by codifying the generally accepted judicial rule making enforceable an express covenant that an assignment by operation of law or the bankruptcy of a party shall terminate the lease. See Finn v. Meighan, 1945, 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624. In the same act the Congress for the first time provided that claims for injuries resulting from the rejection by a trustee of executory leases of real property would be provable against the estate. Theretofore such claims had been regarded by the courts as too speculative to be proven, but the 1938 Act allowed their proof for one year from the date of surrender of the property to the landlord in Chapter X cases, § 63, sub. a(9), and three years from the date of surrender in Chapter XI cases, § 353. See also the revisions made by the 1938 Act in § 64, sub. a(5). In spite of these amendments favorable to contract creditors, Congress did not see fit to revise the doctrine limiting the priority of executory contract claim to circumstances where the contract was assumed by the trustee or debtor in possession or the property was actually used. It is not for the courts to read such an amendment into the statute.

Appellants' assertions that they are entitled to priority with respect to their claims for pre-petition demurrage and stevedoring damages are without foundation. Section 64, sub. a(5), upon which appellants rely, states that claims for "rent owing to a landlord who is entitled to priority by applicable State law * * * which accrued within three months before the date of bankruptcy" are entitled to priority. Even assuming, *arguendo*, that demurrage is "rent" within the meaning of the statute, neither the law of New York, where the contracts were made, nor maritime law makes provisions for such priority, and the section is therefore inapplicable. For this reason the referee did not abuse his discretion in denying Dracoulis the right to amend its claim to seek priority for pre-petition demurrage.

Affirmed.