In the Matter of FRED SANDERS COMPANY, a Michigan corporation, Debtor.

**Bankruptcy No. 81–00788–B.**

United States Bankruptcy Court, E. D. Michigan, S. D.

Sept. 7, 1982.

McCabe, Middleton & Patterson by Bruce C. Patterson, Detroit, Mich., for Fruehauf.

Dickinson, Wright, Moon, Van Dusen & Freeman by Thomas A. Zimmer, Detroit, Mich., for debtor.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

This controversy involves the question of how to compute an administrative expense claim incurred for leased property when the lease is ultimately rejected by the debtor.

On or about August 8, 1977, Fred Sanders Company (debtor)[1] entered into a lease agreement with Fruehauf Corporation (Fruehauf) under which the debtor leased three vans. The lease was to run for 84 months at a monthly rental of $966.18.

Debtor filed for relief under Chapter 11 on February 17, 1981 and continued to operate the business pursuant to section 1108. On or about May 20, 1981, Fruehauf and the debtor commenced negotiations relative to the assumption of the lease by the debtor. Negotiations collapsed, whereupon Fruehauf filed an application requesting the court to set a time limit within which the debtor was to assume or reject the lease. The debtor, Fruehauf and counsel for the Creditors' Committee entered into an agreement, pursuant to which the debtor was to assume or reject the lease by January 31, 1982. The stipulation did not include any provision for payments by the debtor pending its decision to assume or reject. The debtor decided not to assume the lease and returned the vehicles to Fruehauf in February of 1982. The debtor has not made any lease payments other than a payment made shortly after the bankruptcy filing.

Thereafter, Fruehauf filed an administrative claim for $10,041.37, the accumulated lease obligation from the inception of the Chapter 11 proceeding to the date of the return of the property. This claim was filed pursuant to section 503(b)(1)(A), which provides that an administrative expense claim is allowable for "the actual, necessary costs and expenses of preserving the estate."[2] The debtor objected to the allowance of the claim, contending that it did not use any of the vans prior to rejection of the lease and, therefore, Fruehauf has no claim.

In cases involving equity receiverships, courts maintained that since a receiver was not in privity of contract with the lessor, he did not "become liable on existing leases merely by appointment or temporary occupation." *In re Chase Commissary Corp.*, 11 F.Supp. 288, 289 (S.D.N.Y. 1935); Pomeroy, *Equity Jurisprudence* § 1624 (4th Ed. 1919). He became liable on the lease only if he adopted the lease. *In re United Cigar Stores Co.*, 69 F.2d 513 (2d Cir. 1934). This rule was fashioned because of the courts' justifiable concern to preserve the debtor's estate. A receiver, it was felt, should have an opportunity to decide whether a lease was of benefit to the estate before assuming the burdens imposed by the lease. Receivers are

> [n]ot bound to accept property which, in their judgment, is of an onerous and unprofitable nature, and would burden instead of benefit the estate, and can elect whether they will accept or not after due consideration and within a reasonable time.

*Dushane v. Beall,* 161 U.S. 513, 515, 16 S.Ct. 637, 638, 40 L.Ed. 791 (1896).[3]

In bankruptcy cases under the Bankruptcy Act of 1898, courts moved by the same concern adopted the equity receivership rule. The adjudication in bankruptcy, they held, transferred "to the trustee[4] all property of the bankrupt except his executory contracts (such, for instance as leases) and

---

1. The term "debtor" will be used to mean debtor or debtor-in-possession, as the context requires.

2. The claim filed by Fruehauf was actually filed in the amount of $28,521.34. The amount in excess of $10,041.37 is for accrued prepetition payments. The prepetition debt is merely an unsecured claim not entitled to priority.

3. For a discussion of the treatment of leases in an equity receivership, see, T. Finletter, *Principles of Corporate Reorganization* 226–40 (1937).

4. A debtor-in-possession has the powers and duties of a trustee. § 1107.

to vest in the trustee the option to assume or renounce the lease." *In re Scruggs*, 205 F. 673, 677 (S.D. Ala. 1913). Leases vested in the trustee under this view only if he exercised his option to assume. *In re Frazin*, 183 F. 28 (2d Cir. 1910). 4A *Collier Bankr.* ¶ 70.43 (14th ed. 1978).[5]

The difficulty with this analysis is that it ignores section 70a, which provides that a trustee was "vested by operation of law with the title of the bankrupt as of the date of the filing of the petition" to all property of the debtor. Section 70a did not except executory contracts or leases from its scope. Courts were not unaware that they were ignoring the express language of section 70a.

> [I]t is said, however, that this conclusion [that leases do not automatically vest in the trustee] is at variance with the express provision of the bankruptcy act that all the estate of the bankrupt shall vest in the trustee as of the date of the adjudication; that a leasehold interest is property and must necessarily pass with all other property. In our opinion, however, the provisions of the bankruptcy act must be read in view of the principles stated in many decisions and expressly recognized in the English bankruptcy statutes that there is a distinction between property which may be burdensome to an estate and that which is manifestly beneficial to it. The latter, of course, passes upon the

adjudication. The former passes only when accepted by the trustee[.]

*In re Frazin, supra*, at 32.

There is no need to resort to the fiction of delayed vesting under the Code to reach the result that a trustee is not bound by an existing lease until he affirmatively adopts the lease. The debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the estate." § 541. The legislative history states that the "debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or a *leasehold* interest." H.R. Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess 82 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5868, 6323 (emphasis supplied). Clearly, therefore, upon the filing of the bankruptcy petition, a lease becomes property of the estate. Section 541, however, must be read in conjunction with section 365(a), which provides that the debtor may assume or reject any existing lease.[6] The right to assume presupposes that assumption does not automatically take place upon the filing of the bankruptcy petition, and the right to reject presumes the existence of something which can be rejected. The apparent conflict between section 541 and section 365 is readily reconcilable. A lease has two aspects—the lessee's right to possession and use, and his correlative obligation to make the agreed-upon lease pay-

5. Prior to 1938, the option to assume or reject was conferred by case law. *In re Sherwoods*, 210 F. 754 (2d Cir. 1913); *Chapman v. First Nat'l Bank*, 37 F.2d 105 (W.D. Wash. 1929). In 1938, Section 70b was added to the Bankruptcy Act and expressly gave a trustee the right to assume or reject executory contracts and leases and fixed a time within which he had to do so in Chapter 7 cases.

Section 70b provides that the trustee had to assume or reject an executory contract on unexpired leases within 60 days after adjudication or within thirty days after qualification, whichever is later. If the trustee did not elect to assume within the statutory period, all executory contracts and unexpired leases were rejected. In a reorganization case, the debtor could assume or reject at any time prior to confirmation of a plan, subject to the court's

power to fix a time limit upon request of a lessor.

6. In a Chapter 7 case, a trustee, if he desires to assume, must do so within 60 days after the order for relief. § 365(d)(1). In a Chapter 11 case, the debtor may assume or reject at any time before confirmation § 365(d)(2). But the court may, upon request of the other party to an executory contract or lease, fix a time within which the debtor must make his election. *Id.*

If a lease is not rejected during a Chapter 11 proceeding and is not dealt with in the plan, the lease rides through, and the debtor is bound by its terms. *Watson v. Merrill*, 136 F. 359 (8th Cir. 1902); *Federal's, Inc. v. Edmunton Co.*, 404 F.Supp. 68 (E.D. Mich. 1975), *aff'd* 555 F.2d 577 (6th Cir. 1977); 2 *Collier Bankr.* ¶ 365.03[1] (15th ed. 1982).

ments. The debtor lessee's right to possession and use of the leased property becomes part of the estate. The debtor, however, is not liable for the payments provided for under the lease until the lease is assumed. Until the lease is assumed, the estate is liable only for the reasonable value of the leased property—the same obligation which existed under equity receiverships and the Bankruptcy Act. 2 *Collier Bankr.* ¶ 365.-03[2] (15th ed. 1982). There is disagreement, however, as to what constitutes reasonable value.[7]

The debtor contends that prior to the assumption of a lease, the claim of a lessor is merely "an equitable right based upon the benefits conferred rather than the contract price." *In re United Cigar Stores,* 69 F.2d 513 (2d Cir. 1934). Since it did not use the vans, no benefit was conferred upon the debtor and, therefore, Fruehauf has no equitable claim. *American A. & B. Coal Corp. v. Leonardo Arrivabene S.A.,* 280 F.2d 119 (2d Cir. 1960); *120 Wall Associates v. Schilling,* 266 F.2d 548 (2d Cir. 1959); *Central Manhattan Properties v. D.A. Schulte, Inc.,* 91 F.2d 728 (2d Cir. 1937); *In re United Cigar Stores, supra; In re Chase Commissary Corp., supra; In re Rhymes,* 14 B.R. 807; 8 B.C.D. 636 (Bkrtcy., D. Conn. B.J. 1981); *In re Standard Furniture Co.,* 3 B.R. 527; 6 B.C.D. 270 (Bkrtcy., S.D. Cal. B.J. 1980); *In re C.R.S. Architectural Metals Corp.,* 1 B.R. 729 (Bkrtcy., E.D.N.Y. B.J. 1979); *Matter of Furniture-in-the-Raw, Inc.,* 4 B.C.D. 519 (S.D.N.Y. B.J. 1978), aff'd 462 F.Supp. 958 (S.D.N.Y. 1979). However, there is substantial case authority that rejects the debtor's argument that the use the debtor makes of the leased property dictates the amount of the lessor's claim.

In *Kneeland v. American Loan & Trust Co.,* 136 U.S. 89, 10 S.Ct. 950, 34 L.Ed. 379 (1890), the plaintiffs purchased real property at a foreclosure sale held by the receiver of an insolvent railroad. The terms of the sale provided that the property was subject to encumbrance for the expenses of the receivership. The receiver had incurred rental expenses for rolling stock under lease to the railroad, which the receiver had taken possession of during the receivership. The plaintiffs objected to the amount of the rental expense, claiming that they should not have been liable for the entire amount of rent when the receiver did not assume the lease and did not use all of the rented property.

The Supreme Court rejected the plaintiffs' contention that the obligation accrued by the receiver should be based only on his actual use of the property and held that the claim should be allowed "at a reasonable value irrespective of actual use". *Id.* at 101, 10 S.Ct. at 954. In justifying this result, the court stated:

> [I]f more was taken possession of than was needed, it was their mistake. The court is not to be assumed to be an experienced railroad manager, knowing exactly the amount of rolling stock needed for the operation of the road. It may justly assume that what had been contracted for was necessary, and if the trustees ask that all may be taken possession of, it may act upon that as a declaration that all is necessary, and that rental value is to be paid for all. *Id.*[8]

In *Fleming v. Noble,* 250 F. 733 (1st Cir. 1918), the debtor leased a building for a stated monthly rental. A receiver was ap-

---

7. Section 365 sets forth detailed rules for the treatment of executory contracts and unexpired leases. Unfortunately, however, it does not address the "reasonable value" question.

8. All of the cited cases which hold that a lessor's claim is based upon the actual use made of the leased property except *American A. & B. Coal Corp.* have ignored *Kneeland. American A. & B. Coal Corp.* cites *Kneeland* for the proposition that the estate is liable only for the "reasonable value" of the benefit acquired, but it is clear that each of them attach different

meanings to the concept of benefit. *American A. & B. Coal Corp.* maintains that benefit is measured by actual use while *Kneeland* holds that benefit is measured by control of the leased property irrespective of how it is actually used.

*Philadelphia Co. v. Dipple,* 312 U.S. 168, 61 S.Ct. 538, 85 L.Ed. 651 (1941), appears to conflict with *Kneeland.* These opinions, however, are reconcilable. *See* Finletter, *Corporate Reorganization, supra,* note 3 at 232 n. 87.

pointed to take charge of the debtor's property prior to the receivership. The debtor, prior to the receivership, was using half of the building for his business and half for storage. The receiver leased the total premises to third parties for the amount for which he was obligated under the lease, which was acknowledged to be the "fair rental value." The receiver, however, proposed to pay the lessor only for that part of the building which the debtor had been using for business purposes. The court, relying on *Kneeland, supra,* rejected the argument that the value of the lessor's claim should be based upon the limited use of the premises by the debtor, stating,

> [i]f the receiver had desired to relieve himself from the payment of the fair rental value during the time he occupied the premises, he should have made an agreement with the landlord fixing the rent which he should pay, and if he could not agree upon a satisfactory rental he could have removed the property under his control.

250 F. at 735. *See also, In re Millards, Inc.,* 41 F.2d 498 (7th Cir. 1930); *Matter of Datamation,* 1 BCD 1698 (S.D.N.Y. B.J. 1975).

The approach adopted in the above cases has also been followed by this Circuit. In holding that the claim for leased property is to be determined not by reference to the actual use of the property by the receiver, but by reference to the reasonable rental value of the property, the Sixth Circuit in *Dayton Hydraulic Co. v. Felsenthall,* 116 F. 961, 966 (6th Cir. 1902), stated

> [I]t is entirely agreeable to equitable principles regulating the relation of [trustees and debtors in possession] to leasehold estates, that, by acts and conduct not involving actual occupation of the premises, a receiver may come under an equitable obligation to a lessor for rents accruing during the receivership. A court of equity will not suffer an injustice to be done a lessor by acts or conduct which amount to an exclusion of the lessor from the premises, and an appropriation of them to the supposed benefit of the trust.

The view that the estate should be liable only for the debtor's actual use or occupancy is based, in part at least, upon the premise that expenses of administration are to be minimized. The desire to keep a lid on expenses of administration is laudable, but an estate is not to be maintained for the debtor or creditors at the expense of those who have valid charges against property of the estate.

> [I]n establishing proper administrative rent, . . . the Referee should not consider that the trustee has used only for storage purposes property that had been occupied by a going business. . . . Nor can the appropriate rent be limited by the amount that the Referee feels the estate can "afford to pay"—to do so would be to confer on general creditors an advantage obtained after bankruptcy at the expense of the landowner.

*Diversified Services, Inc. v. Harralson,* 369 F.2d 93, 95 (5th Cir. 1966).

To permit a debtor to deprive a lessor of the use of his property and unilaterally dictate the amount of the lessor's claim does not comport with elementary notions of justice. Equity is best served by the rule adopted in *Kneeland v. American Loan & Trust Co., supra; Fleming v. Noble, supra;* and *Dayton Hydraulic Co. v. Felsenthall, supra.* Debtors not only have the right to retain and use leased property while deciding whether to assume or reject the lease, but also the right to assign the lease even if the lease prohibits or restricts assignment subject only to the condition that adequate assurance of future performance by the assignee is provided. § 365(f)(1), (2)(B). The inequity of compelling a lessor to, in effect, give a debtor the option to negotiate a favorable assignment of the lease for which it has no business use, or to return the leased property, if unable to do so, without compensating the lessor for the reasonable use value of the property is self evident. Fruehauf's claim is to be computed by reference to the use value of the vans and not by the benefit, if any, conferred upon the debtor.

Practical considerations also dictate that the lessor's claim should be based on the reasonable value of the property regardless of the purpose for which it was used by the debtor. To hold otherwise would require every lessor to move immediately to seek a court order compelling the debtor to assume or reject an existing lease. "Experience under the present code has shown beyond doubt that the transaction cost of seeking any form of relief in the bankruptcy court is an extremely strong deterrent to creditor action, and that creditors will act only where the expected benefits strongly out-

weigh the costs of the proceeding."[9]  There is no justification for imposing this burden upon a lessor who is willing to cooperate with the debtor.  A debtor has it within his power to minimize the costs of administration by acting promptly.  "[T]he debtor is generally well aware in advance that a bankruptcy may be necessary and can plan ahead to decide which leases should be retained."  Report of the Committee on the Judiciary United States Senate on S.2297, S.Rep.No. 527, 97th Cong. 2d Sess. 12 (1982) (Shopping Center Protections Improvements Act of 1982).  A result which encourages dilatory action by the debtor should be avoided.

Nor is the fact that Fruehauf could have moved pursuant to section 365(d)(2) to compel the debtor to assume or reject the lease pertinent to the present inquiry.  A lessor is not to be penalized if he cooperates with the debtor and gives him time to resolve his financial problems.  The lessor has a right to assume that until a debtor rejects a lease, the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the property measured by such use. *Matter of Florida Airlines, Inc.,* 17 B.R. 683 (Bkrtcy. M.D. Fla. B.J. 1982).[10]

In the absence of convincing evidence to the contrary, the payment fixed by the lease is presumptively reasonable.  *Green v. Finnegan Realty Co.,* 70 F.2d 465 (5th Cir. 1934); *Matter of Chase Commissary Corp., supra; Matter of Datamation, supra.* Fruehauf's claim, therefore, is to be computed by reference to the payments stipulated in the lease, unless the debtor establishes that these payments are not reasonable.[11]

An appropriate order to be submitted.

9.  Senate Committee on the Judiciary, S. 2000: Bankruptcy Improvements Act of 1982, S. Rep. 97–446, 97th Cong. 2d Sess. 35 (1982).

10.  The debtor by making a lease payment and entering into negotiations with respect to the lease gave Fruehauf added justification for making this assumption.

11.  Since any rule of liability involving the claim of the lessor is equitable in nature, facts not present here may justify a different result.