In re Lloyd **CARMICHAEL** and
Lorraine **Carmichael, Debtors.**

**Bankruptcy No. 89 B 30695.**

United States Bankruptcy Court,
N.D. Illinois, W.D.

Jan. 4, 1990.

Stephen G. Balsley, Rockford, Ill., for debtors.

Joel A. Schechter, Chicago, Ill., for applicant.

MEMORANDUM OPINION
AND ORDER

RICHARD N. DeGUNTHER,
Bankruptcy Judge.

This matter comes before the Court on an Application for Payment of Administra-

tive Expenses, filed by Crossland Credit Corp. (Crossland). The Debtors, Lloyd and Lorraine Carmichael, are represented by Attorney Stephen G. Balsley. Crossland is represented by Attorney Joel A. Schechter.

This Memorandum Opinion and Order shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The facts are virtually undisputed. The Debtors leased certain irrigation equipment, through a series of transactions, from Crossland. The lease was to terminate by its terms on December 1, 1991, and provided for annual payments of $50,000. On May 3, 1989, the Debtors filed a Petition under Chapter 12 of the Code. At that time, the Debtors were in default for one payment under the lease, in an approximate amount of $53,750. Crossland subsequently inquired whether the Debtors intended to assume or reject the lease on the irrigation equipment. The Debtors indicated that they had not decided whether to assume or reject the lease, but suggested that a mutual release of liabilities be executed in exchange for the cancellation of the lease. On May 30, 1989, Crossland rejected the Debtors' proposal.

On July 14, 1989, Crossland filed an Application to Compel Assumption or Rejection of Lease and For Administrative Expenses. The Debtors were ordered to assume or reject Crossland's lease by August 25, 1989. After failing to do so, the lease was deemed rejected. The issue which remains to be addressed is whether Crossland is entitled to recover the pro-rata share of rent on the equipment over the period between the Debtors' bankruptcy filing and the date the lease was rejected, as an administrative expense. The Debtors have alleged that the irrigation equipment sat idle on leased property pursuant to a lease that had expired prior to the Debtors' bankruptcy filing and was not used by the Debtors. The Debtors also alleged that Crossland did not attend the 341 meeting to determine whether the equipment was being used. The Debtors argued that Crossland is not entitled to obtain administrative expenses on the equipment because the equipment was not used and did not benefit the estate.

Crossland contends that although the equipment was not used by the Debtors, administrative expenses in the form of rent should be allowed for the period of time up to the date of rejection of the lease because the Debtors unreasonably withheld possession of the equipment. Specifically, Crossland asserts that the Debtors should have informed Crossland that it may take possession of the equipment because they knew they had no use for the irrigation equipment and knew they were not using the equipment.

Section 503(b) provides in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case:

11 U.S.C. § 503(b).

■ This section has been applied by several courts to requests for "use and occupancy" expenses incurred pending the assumption or rejection of executory contracts, but with differing results. One line of authority holds that the lessor has a right to assume that until a debtor rejects a lease, the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the measured by such use. *See, In re Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich.1982); *In re GHR Energy Corp.*, 41 B.R. 668 (Bankr.D.Mass.1984); *In re Nordyke*, 43 B.R. 856 (Bankr.D.Or. 1984). The court in *Fred Sanders* observed that:

the desire to keep a lid on expenses of administration is laudable, but an estate is not to be maintained for the debtor or creditors at the expense of those who have valid charges against property of the estate.

22 B.R. 906. Under this approach, administrative expenses are recoverable regardless of whether the debtor used the property.

The case of *Broadcast Corporation of Georgia v. Broadfoot II (In re Subscription Television of Greater Atlanta)* 789 F.2d 1530 (11 Cir.1986), represents the line of authority which rejects the reasoning in *Fred Sanders,* and holds that the trustee's rejection of an executory contract or lease does not give rise to administrative expenses unless the trustee actually uses the property. In *Subscription Television,* a contract requiring the applicant to provide a television signal to the debtor was deemed rejected after the trustee declined to assume it within the 60 day statutory period. The applicant sought administrative expenses for the transmitting of the signal over the 60 day period, although the signal was actually transmitted only 17 days. The District Court allowed recovery for only the time the signal was actually transmitted, and the Eleventh Circuit affirmed, adopting the reasoning of the District Court.

The District Court in *Subscription Television* reasoned that the inclusion of the words "actual" and "necessary" in § 503(b)(1) mean that the estate must accrue a real benefit from the transaction, as opposed to mere potential benefit, for administrative expense priority to be granted on claims against the estate. The court also found that *Fred Sanders* misinterpreted the distinction between the entitlement to an administrative claim for the actual benefit to the estate, and the amount of administrative expenses which may be recovered, once allowed, based upon the trustee's particular use of the asset. Only after it is established that the estate actually benefited from the transaction may a court estimate the amount of the "benefit" by considering the reasonable use of the property. *See also, In re Pickens–Bond Construction Co.,* 83 B.R. 581 (Bankr.E.D. Ark.1988); *In re N–Ren,* 68 B.R. 404 (Bankr.S.D.Ohio 1986); *In re Intran Corp.,* 62 B.R. 435 (Bankr.C.D.Minn.1986).

■ This Court is persuaded that the decision in *Subscription Television* correctly interprets § 503. The use of the terms "actual" and "necessary" were not accidental but were included to impose the requirement that the estate is actually benefited. The language of § 503 continues the longstanding rule under the former Bankruptcy Act that a creditor's right to payment will be afforded priority only to the extent the estate was benefited in fact from the consideration supporting the creditor's claim. *See, American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119 (2nd Cir.1960); *In re Mammoth Mart, Inc.,* 536 F.2d 950 (1st Cir.1976).

Moreover, it appears that precedent in this jurisdiction favors the position adopted in *Subscription Television.* Claims should be granted priority status only if the claim comports with the language and underlying purposes of § 503. *See, In re Jartran,* 732 F.2d 584 (7th Cir.1984). In *Jartran,* the court held that when third parties are induced to supply goods or services to the debtor, and the estate is benefited, the claims of those entities should be afforded priority so as to provide incentive to third parties to furnish credit necessary for the debtor's reorganization. It cannot be said that providing administrative priority to a prepetition lessor's claim would further this policy.[1]

The court in *Jartran* also addressed the cases of *American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A..* supra, and *In re Mammoth Mart, Inc.,* supra, noted above. The court adopted the analysis applied in *Mammoth Mart,* for purposes of § 503, which supports the conclusion that the estate can only be charged for expenses from activities which benefit it. The court reviewed the dicta in *American Anthracite,* namely that a creditor is entitled to administrative priority for benefits conferred under the executory contract prior to its rejection, as an "equitable right," based upon the reasonable value of the benefit conferred. Although the *Jartran* court did not accept this premise, choosing to phrase the issue

---

1. It has also been recognized that the purpose of according administrative expense priority is not only to encourage creditors to do business with the debtor, but also to prevent unjust enrich-

ment to the debtor's estate. *See, In re Strause,* 40 B.R. 110 (Bankr.W.D.Wis.1984). This policy would not be violated as the estate received no benefit from the transaction at issue.

in terms of whether an act of inducement or acceptance had been made, it did not reject the requirement that the estate actually benefits from the consideration provided.

One case which has been cited by the courts when addressing issues similar to the ones at bar, but is distinguishable, is *In re Xonics*, 65 B.R. 69 (Bankr.N.D.Ill.1986). In that case, the court held that the lessor was entitled to administrative expenses for the period of time between the filing of the petition and the rejection of a lease, which had been executed prepetition. Although the court ultimately awarded an amount based upon the reasonable use of the property, regardless of the actual use or benefit obtained, a close reading of the court's opinion shows that the debtor had in fact used the lessor's property. The "actual use" factor was excluded by the court only for purposes of determining the amount of expense recoverable. *See also, In re Millards*, 41 F.2d 498 (7th Cir.1930). Hence, *Xonics* is inapposite to the case at bar.

Equally relevant to this analysis is the statutory framework in which the issue at bar arises. The assumption or rejection of an executory contract is provided in § 365 of the Code, which contemplates a "breathing spell" for debtors to determine whether an executory contract will be benefitial to the estate. This time period for assuming or rejecting an executory contract can be limited upon the request of the diligent lessor. *See*, 11 U.S.C. § 365(d)(2). Under this statutory provision, the burden is on the lessor to ascertain whether the debtor is actually using the lessor's property, much the same as a secured lender must monitor its collateral. If the property is not being used, the lessor cannot sleep on its rights in limiting the period of assumption or rejection, at the expense of unsecured creditors who do not receive any benefit.

In short, both the statutory framework and relevant caselaw persuade this Court that unless actual benefit accrues to the debtor post-petition on leased property, the lessor may not recover administrative priority expenses on what is essentially a prepetition obligation. The approach espoused by *Fred Sanders* misconstrues Section 503 and incorrectly blurs the distinction between the actual benefit to the estate requirement and the proper measure for determining that benefit.[2]

In the present case, Crossland has conceded that the irrigation equipment was not used by the Debtor post-petition. Crossland has also not established that the estate actually benefited from the irrigation equipment. The Court is persuaded that, although this is a Chapter 12 case involving an ongoing reorganization as opposed to the type of liquidation involved in *Subscription Television*, the principles and statutory provisions stated above apply, and warrant the finding that administrative expenses should not be allowed to Crossland.

Crossland's argument that the Debtors did not inform them of their intentions of abandoning the property does not change this result as it misplaces the burden of investigation. Crossland's Motion to Compel Assumption or Rejection was filed two months after the case was filed. While the statutory treatment of lessors is not entirely satisfactory, and may even be said to disenfranchise the lessors from any real participation in the case, lessors such as Crossland still must act diligently in protecting their rights. The Debtors did nothing here that they were not entitled to do under the Code, namely determine the benefits of assuming or rejecting the lease through negotiations with Crossland.

Therefore, based on the foregoing, the Court concludes that the Application for Payment of Administrative Expenses should be denied.

IT IS SO ORDERED.

---

**2.** It may even be argued that *Fred Sanders* was overruled by statute in cases involving personal property leases, because § 365 was amended to require timely performance of the lease on non-residential real property by the debtor until assumed or rejected, notwithstanding § 503. *See*, 11 U.S.C. § 365(d)(3).