**In re Robert N. TEMPLETON, Debtor.**

**Bankruptcy No. 92–31053–LMC.**

United States Bankruptcy Court,
W.D. Texas,
El Paso Division.

April 9, 1993.

---

R. Byrn Bass, Jr., Lubbock, TX, for debtor.

Deidre B. Ruckman and Mark S. Rubin, Dallas, TX, for First National Leasing, Inc.

## ORDER DISMISSING MOTION FOR PAYMENT OF ADMINISTRATIVE CLAIM AND DENYING REQUEST FOR ATTORNEYS' FEES

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for hearing Motion of First National Leasing, Inc. ("First National") for Payment of Administrative Claim. Robert N. Templeton (the "Debtor") responded and requested attorney's fees and costs. Upon consideration thereof, it is the ruling of the court that First National's Motion be dismissed and the Debtor's request for attorney's fees and costs be denied.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

## BACKGROUND

The Debtor filed his petition for relief under chapter 12 of title 11 of the United States Code (the "Bankruptcy Code") on August 21, 1992 (the "Petition Date"). The Debtor is a farmer. Pursuant to a Lease Agreement dated April 11, 1989, the Debtor leased a tractor and plow, with various accessories (the "Leased Equipment"), from First National. Prior to the Petition Date, the Debtor used the tractor and plow to till his farmland. However, the Debtor stopped using the Leased Equipment after the Petition Date.

On September 8, 1992, First National Filed its Motion to Compel Assumption or Rejection of Unexpired Lease and to Require Immediate Payment of Costs of Administration of Estate and/or for Adequate Protection. The Debtor and First National engaged in subsequent discussions regarding the Leased Equipment. On October 19, 1992 the Debtor informed First National that the Debtor intended to reject the Lease Agreement.

On November 12, 1992 (the "Rejection Date"), the court entered an Agreed Order, signed by the Debtor and First National, wherein the Debtor rejected the unexpired Lease Agreement. However, since that date, First National has not repossessed the Leased Equipment from the Debtor. The Leased Equipment remains in the Debtor's possession, unused, and in good condition.

First National contends that it is entitled to an administrative priority claim for $4,018.37, for the post-petition accrued lease obligations prior to the Rejection Date. The Debtor argues First National is not entitled to an administrative priority claim since he did not use the Leased Equipment post-petition, and mere post-petition possession of the equipment did not benefit the estate.

## DISCUSSION

■ Where a debtor is a party to an unexpired lease, the Bankruptcy Code grants that debtor a period of time to decide if that lease should be assumed or rejected. See 11 U.S.C. § 365(d). General-ly, if the debtor decides that the lease is burdensome to the estate, it is rejected. If the lease is beneficial, the debtor assumes it. If the debtor rejects the lease, the lessor is entitled to damages for breach of contract. See 11 U.S.C. § 365(g)(1).

The Bankruptcy Code also allows for priority status of post-petition expenses incurred in the administration of the estate. Section 503(b)(1) of the Bankruptcy Code provides that an administrative expense will be allowed against the estate for "the actual, necessary costs and expenses of preserving the estate ... after the commencement of the case". See 11 U.S.C. § 503(b)(1). The sole issue of the case at bar is, therefore, whether First National is entitled to an administrative priority claim for the post-petition rents which accrued under the Lease Agreement prior to the Rejection Date.

There are two lines of cases regarding the granting of administrative priority status to post-petition rents prior to the rejection of an unexpired lease. One line of cases holds that a creditor may be granted an administrative priority expense for post-petition rental claims even where the estate does not benefit from the possession of the creditor's property. See, e.g., In re Curry Printers, 135 B.R. 564 (Bankr.N.D.Ind. 1991); Matter of Fred Sanders Co., 22 B.R. 902 (Bankr.E.D.Mich.1982). The other line of cases, adopted by this court, requires that the bankruptcy estate must benefit from the use of the creditor's property to be granted an administrative priority claim. See, e.g., United Trucking Service, Inc. v. Trailer Rental Co., 851 F.2d 159 (6th Cir.1988). Broadcast Corp. of Georgia v. Broadfoot (Broadcast I), 54 B.R. 606 (Bankr.N.D.Ga.1985), aff'd (Broadcast II), 789 F.2d 1530 (11th Cir. 1986); In re Carmichael, 109 B.R. 849, 851 (Bankr.N.D.Ill.1990); In re Yost, 54 B.R. 818, 821 (Bankr.W.D.Ky.1985).

It is undisputed that the Debtor has not used the Leased Equipment since the Petition Date. Furthermore, it is equally undisputed that the estate has not benefitted from the mere possession of the Leased Equipment. In light of this, First National

relies principally upon *Matter of Fred Sanders Co.*, 22 B.R. 902 (Bankr.E.D.Mich. 1982) and its progeny. *Sanders* stands for the proposition that a lessor· is entitled to an administrative claim based on the reasonable rental value of the property regardless of the Debtor's use and benefit from the leased property post-petition up to the Rejection Date. *See* 22 B.R. 902, 906.

The *Sanders* case closely parallels the facts at bar. The debtor had leased three vans. The debtor rejected the lease post-petition, and the lessor filed an administrative priority claim pursuant to § 503(b)(1)(A) for the post-petition lease obligations. The debtor objected to the allowance of the claim, asserting that it had not used the vans post-petition, and therefore the lessor had no claim. The court disagreed with the debtor, and stated:

> The view that the estate should be liable only for the debtor's actual use or occupancy is based, in part at least, upon the premise that expenses of administration are to be minimized. The desire to keep a lid on expenses of administration is laudable, but an estate is not to be maintained for the debtor or creditors at the expense of those who have valid charges against property of the estate.

*See Sanders*, 22 B.R. at 906 (quoting *Dayton Hydraulic Co. v. Felsenthall*, 116 F. 961, 966 (6th Cir.1902)).

Under § 365 of the Bankruptcy Code, a Debtor has the right to assume or reject an unexpired lease. A Debtor under chapter 12 of the Bankruptcy Code may assume or reject a lease at any time before the confirmation of its plan. *See* 11 U.S.C. § 365(d)(2). This time period provides the debtor with a "breathing spell" to determine whether the unexpired lease is beneficial to the estate. *See Carmichael*, 109 B.R. at 851. Of course a diligent lessor may move the court for an earlier determination. *Id.* The *Sanders* court noted that the lessor is deprived of its property while the debtor decides whether the lease should be assumed or rejected. *Sanders*, 22 B.R.

at 906. The court explained that failure to grant administrative priority status for lease obligations accrued post-petition, but pre-rejection, is inequitable to the creditor. *Id.* The court opined that a creditor who cooperates with a debtor should not be penalized for not immediately rushing into court to file a motion to compel assumption or rejection of a lease: [1]

> The inequity of compelling a lessor to, in effect, give the debtor the option to negotiate a favorable assignment of the lease for which it has no business use, or to return the leased property, if unable to do so, without compensating the lessor for the reasonable value of the property is self evident. [The lessor's] claim is to be computed by reference to the use value of the vans and not by the benefit, if any, conferred upon the debtor.

*Sanders*, 22 B.R. at 906.

With due respect to the *Sanders* court, that decision relies too much on the creditor's perspective rather than what the Bankruptcy Code requires to grant administrative priority. "The administrative expense scheme does not focus in the first instance on whether a creditor sustained a loss ... but on whether the estate has received an actual benefit." *Broadcast I*, 54 B.R. 606, 611 (Bankr.N.D.Ga.1985); *see also In re ICS Cybernetics, Inc.*, 111 B.R. 32, 36 (Bankr.N.D.N.Y.1989) (administrative expense inquiry centers on benefit to estate, not loss to creditor, by virtue of debtor's possession of property). Actual use, not mere possession, is a prerequisite to establishing an administrative priority claim. *See In re Adwar Video Corp.*, 38 B.R. 628, 629 (Bankr.S.D.N.Y.1984). To hold otherwise ignores the plain meaning of the Bankruptcy Code, the function and purpose of § 503, and the Congressional scheme for distribution to creditors in bankruptcy.

The Supreme Court has recently noted that bankruptcy courts should interpret the Bankruptcy Code with a view to enforcing the statute's plain meaning. *See, e.g., Tay-*

---

1. That concern is not present here. The Debtor filed his petition on August 21, 1992, and First National filed its motion to compel assumption or rejection of the unexpired lease on September 8, 1992.

*lor v. Freeland & Kronz*, — U.S. —, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Conn. Nat. Bank v. Germain*, — U.S. —, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). A plain reading of section 503(b)(1)(A) indicates that expenses must be "actual and necessary" to be allowed as administrative expenses. Courts have concluded that the use of the words "actual and necessary" in the administrative priority section requires that there must be a real benefit to the estate from the transaction. *See, e.g., United Trucking Service, Inc. v. Trailer Rental Co.*, 851 F.2d 159 (6th Cir.1988); *Broadcast II*, 789 F.2d 1530 (11th Cir.1986); *Carmichael*, 109 B.R. at 851. "The language of § 503 continues the longstanding rule under the former Bankruptcy Act that a creditor's right to payment will be afforded priority only to the extent the estate was benefitted in fact from the consideration supporting the creditor's claim." *See Carmichael*, 109 B.R. at 851.

The *Sanders* rule runs afoul of the plain meaning of the statute. Mere possession of the Leased Equipment was not necessary to this estate. The Leased Equipment was not used by the Debtor in any way. *See Carmichael*, 109 B.R. at 851 (claim of lessor or irrigation equipment not entitled to administrative priority for pre-rejection rent where equipment sat idle on debtor's farm post-petition and conferred no benefit on estate). In fact, the Debtor's continued possession of the Leased Equipment could be considered burdensome to the estate as the estate did not benefit from possession, and lease obligations continued to accrue. "It takes no great insight to perceive that rental expenses of property that is not beneficial to a [reorganizing debtor] are not 'actual, necessary costs and expenses of preserving the estate'." *See Yost*, 54 B.R. at 821 n. 9 (quoting *In re Dixie Fuels*, 52 B.R. 26 (Bankr.N.D.Ala.1985)).

▪ Section 503(b)(1) must be strictly construed. *See Broadcast II*, 789 F.2d at 1532 (allowance of priority is to be carefully considered). In freely granting a les-

sor's claim administrative priority, the *Sanders* court noted that "[t]he lessor has a right to assume that until a debtor rejects a lease, the leased property is being used for the purpose for which it was leased and that the debtor will pay the reasonable value of the property measured by such use." *Sanders*, 22 B.R. at 907. This presumption of benefit shifts the burden from the claimant to the debtor, and "would essentially eliminate any requirement of benefit to the estate, and would allow administrative claims based solely on compensation of the claimant for his loss during the pre-rejection period." *See Broadcast I*, 54 B.R. 606, 610 (N.D.Ga.1985). Granting administrative priority status for every claim arising under an unexpired lease prior to rejection "would produce a strained and unintended construction" of §§ 365 and 503. *See Broadcast II*, 789 F.2d at 1532.

▪ Because the Leased Equipment did not benefit the estate, the First National claim cannot be granted priority status. Section 503 was enacted to limit the dispersal of the limited assets of the estate. *See Broadcast I*, 54 B.R. at 611. In the context of a reorganization, creditors' post-petition claims are granted administrative expense priorities to encourage the transaction of business with the reorganizing debtor. *See In re Jartran*, 732 F.2d 584 (7th Cir.1984) (administrative priority provides incentive to third parties to furnish credit necessary for debtor's reorganization); *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976) (purpose of chapter 11 administrative expense status is to induce third parties to contribute toward rehabilitation of reorganizing debtor). To grant this special status to the claim of a creditor which has done nothing more than wait to get its property back is hardly consistent with this purpose.

▪ Congress drafted the Bankruptcy Code to provide for equality of distribution among similarly situated creditors. Pursuant to that policy, creditors of equal priority should receive a pro rata share of the estate. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 57–58, 110 S.Ct. 2258,

2262–63, 110 L.Ed.2d 46 (1990). This policy would necessarily be offended by granting First National's claim administrative priority status. By requiring that an administrative expense be "necessary" to the estate, Congress assured that unsecured creditors would not gain an advantage over other similarly situated unsecured creditors by seeking priority status. *Broadcast I,* 54 B.R. at 611. Essentially, the *Sanders* rule would allow this unsecured creditor to collect its damages in full via a priority claim, while other pre-petition creditors receive only a pro rata distribution pursuant to a debtor's confirmed plan. The Bankruptcy Code provides that damages from the rejection of an unexpired lease are treated as general unsecured claims, not as priority claims. *See* 11 U.S.C. § 365(g)(1); *see also Acme Precision Bldg. v. Dayton Forging,* 23 B.R. 79, 84 (Bankr.S.D. Ohio 1982). "The *Sanders* Rule therefore distorts Congress' allocation of the estate among the creditors, by giving unwarranted priority to contract creditors over non-contract creditors." *See Broadcast,* 54 B.R. 606, 612 (N.D.Ga.1985). Affording an undeserving claim administrative priority "would dilute the value of the priority and thus frustrate the intent of Congress." *See In re Curry Printers, Inc.,* 135 B.R. 564, 569 (Bankr.N.D.Ind.1991).

The *Sanders* rule would, in effect, impose on the estate the same obligation it otherwise would have had had it affirmatively assumed the lease, even though the lease has *not* been assumed. The Bankruptcy Code affords the estate an opportunity to consider whether the lease in fact has sufficient value to the estate to warrant taking on those obligations, then requires the estate which elects to take on the advantages of the lease to also take up its burdens. *See* 11 U.S.C. § 365(b), (d); 2 L. KING, ET AL., COLLIER ON BANKRUPTCY, ¶ 365.03[2] (15th ed. 1989); *see Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309–10 (5th Cir.1985). It makes no sense to impose the same burdens on an estate which has elected *not* to keep the benefits of the lease, and the Code imposes no such obligation.

Nor does this rule encourage debtors not to pay their post-petition obligations, or to operate at an unfair advantage vis-a-vis its business competitors. *See* 28 U.S.C. § 959. Prior to the estate's making the election to assume or reject a given lease, the debtor is obligated to pay a fair contract value for the use of the leased item, to the extent the estate is enjoying a benefit from the property. *Broadcast I,* 54 B.R. at 611; *see generally* 2 COLLIER, ¶ 365.03[4], at p. 365–34. That is the only duty that section 959 could be fairly said to impose on the estate. If, prior to the estate's making its election, the creditor believes itself to be suffering some loss by virtue of not having its property back, it can petition the court for relief, either by moving to compel an earlier election to assume or reject (as was in fact done here by First National), or by seeking relief from the automatic stay. 11 U.S.C. §§ 365(d)(2), 362(b); *see also* 2 L. KING, ET AL., COLLIER ON BANKRUPTCY, ¶ 365.03[2], at p. 365–30 (15th ed. 1989). This is the mechanism by which the Code contemplates to remedy the harm perceived in *Sanders,* rather than according some sort of priority to compensate the creditor.

## CONCLUSION

Absent a finding of benefit to the estate, First National's claim may not be granted administrative priority. First National's Motion is, therefore, *DENIED.* The Debtor's request for attorney's fees is *DENIED.*

So ORDERED.