**In re Donald William CUSHARD & Jeanette Cushard, d/b/a Cushard Dairy, Debtors.**

**Bankruptcy No. 84–01591–SW–S–2–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

Nov. 19, 1986.

Gary A. Love, Springfield, Mo., for debtors.

Marcus G. Reed, Springfield, Mo., for John Deere Co.

### MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

John Deere Company (Deere) has filed an Application for Determination of Administrative Expenses in the above bankruptcy. The facts are rather simple. On September 29, 1980, debtors executed a retail installment contract (security agreement) with Deere on a 2240 Wind Rower and a 230–14′ Auger Platform. The principal balance was $16,738.00. On May 8, 1981, debtors executed a retail installment contract (security agreement) with Deere on a 3960 Forage Harvester and a 7′ pickup attachment. The principal balance was $8,403.00. On October 21, 1982, debtors executed a lease with Deere for a 6120 Combine and a 220 Flex Platform. The annual lease payment was $18,739.17. On May 17, 1984 the debtors filed their petition for reorganization under Chapter 11 and the struggle between Deere and debtors commenced.

The evidence produced indicated that on the filing date the balance due on the first security agreement was $6,046.59 and the

fair market value was $12,000.00. On July 2, 1986 (date for confirmation) the balance was $7,941.13 and the fair market value was $8,000.00. On the second security agreement, the balance due on the filing date was $6,006.61 and the fair market value was $6,500.00. On the date for confirmation the balance was $7,480.66 and the fair market value was $4,000.00. Based on these facts, Deere asks for an administrative expense, priority, unsecured claim for the unpaid sums which should have been paid to it as adequate protection during the pendency of the proceeding on the two security agreements.

Deere advances the argument that it is entitled to adequate protection from the date of filing and asserts that the obligation of the debtor in possession is to propose adequate security for an oversecured creditor. Deere cites Collier on Bankruptcy (Pamphlet Edition) 1986, page 133 under the heading "Legislative History":

> "the trustee or debtor-in-possession will provide or propose a protection method. If the party that is affected by the proposed action objects, the court will determine whether the protection provided is adequate".

Because the debtors herein failed to do so, Deere believes it should have such adequate protection now declared as an administrative expense.

The Court notes that although this may have been the theoretical window through which Congress viewed the process of protection of secured creditors, the hard reality of everyday practice did not follow this path. In fact and in truth, as in this case, debtors almost universally have dodged, delayed and negotiated adequate protection with a fervor that has provided every bankruptcy court in the country with a myriad of cases and resulted in decisions that embrace all 360 degrees of the compass. Fortunately, this Court can determine 'true north' from three decisions of the Eighth Circuit. These are:

1. *In re Martin,* 761 F.2d 472 (8th Cir. 1985)
2. *In re Briggs Transportation Co.,* 780 F.2d 1339 (8th Cir.1985)
3. *In re Ahlers,* 794 F.2d 388 (8th Cir. 1986)

Based on these cases and the guidelines set out therein, this Court rules that Deere is entitled to adequate protection as a secured creditor from the date it filed its application for adequate protection, i.e., September 10, 1985.

■ Starting from that point, the Court finds that there was an equity cushion in the collateral secured by the first security agreement, but that there was not an equity cushion in the collateral secured by the second security agreement. Accordingly the Court awards Deere the sum of $2,006.61 as an administrative expense since the Honorable Joel Pelofsky did not rule the Motion of Deere for Adequate Protection and thus resulted in this amount of loss of secured value on the second security agreement. Because the equity cushion was sufficient to cover the full amount of Deere's secured claim at the time for confirmation on the first security agreement, Deere suffered no loss from Judge Pelofsky's failure to rule as to that motion and no administrative expense claim will be allowed as to the collateral on the first security agreement.

Deere's request for "lost opportunity" computed as interest on $18,500.00 from filing date to confirmation date is DENIED.

■ Moving then to the question of the lease, a somewhat more complex situation is presented. A Chapter 11 debtor in possession occupies the position of a Trustee and was afforded (pre 1984) a reasonable time to assume or reject a lease under Section 365(d)(2). Should the debtor in possession not accept or reject within a reasonable time, the estate is liable to the creditor for the reasonable value of the use of the property. That reasonable value may be or may not be the rent reserved in the lease. Collier on Bankruptcy, 15th Ed., Section 365.03 (32 & 33) and *Matter of Fred Sanders Co.,* 22 B.R. 902 (Bankr.E.D.Mich.1982).

In the instant case, the conduct of debtors did nothing to ameliorate the situation. Debtors filed their petition May 19, 1984. Deere filed its Motion to Compel Acceptance or Rejection of the Lease on October 2, 1984. Judge Pelofsky ordered debtors on November 6, 1984 to accept or reject by December 7, 1984. Debtors did neither. Deere filed another Motion and debtors still did nothing until finally they surrendered the combine in 1986. Deere sold the combine for $31,000.00 after the debtors' plan rejected the lease and debtors finally released the combine to Deere, having held it for some two years without paying one cent and using it for two harvests. At the hearing debtors suggested that the use was minimal because of the sparse nature of the 1984 and 1985 crops. Debtors contend that the claim should be for only the value of 100 hours use in 1984 computed at $40.00 per hour and 100 hours in 1985 computed at $35.00 per hour. Deere, of course, wanted the full lease payment of $18,739.17 per year. Deere's evidence showed that the combine had 1074 hours use on it when debtors surrendered it in 1986 which would indicate an annual usage of 268 hours. Deere's evidence also was that the reasonable value per hour of usage should be $60.00 to $65.00. Based on these facts, it is the Court's responsibility to fix the dollar amount of Deere's claim for administrative expense.

The Court admits a strong feeling of disbelief after reviewing this file. It has always been the assumption of this Court that when debtors voluntarily sought the protection of the bankruptcy court, both they and their counsel impliedly agreed they would abide by the rules of the Bankruptcy Code and the rulings of the Bankruptcy Judge. In view of this, the Court finds that the conduct of both debtors and their counsel has been at best incomprehensible—at worst reprehensible. For over a year the debtors and counsel had defied the Orders of this Court, kept creditor John Deere Company from its property and now ask this Court to set a minimal cost for their acts. It may well be that the wages of sin are not death in the Bankruptcy

Court due to the limited jurisdiction of the Court, but neither are they approbation.

Accordingly the Court rules that John Deere Company is entitled to $37,478.34 as an administrative expense claim for the use of the combine by debtors from May of 1984 until its surrender in 1986.

The total amount of administrative expense claim based on the lease and the second security agreement is calculated at $39,484.95 and John Deere Company is awarded that amount as an administrative expense claim.