**In re BOB ENGLER COMPANY, INC., Debtor.**

**James L. ADASHEK, Trustee, Plaintiff,**

**v.**

**WAGNER PRODUCTS DIVISION OF E.R. WAGNER MANUFACTURING, Defendant.**

**Bankruptcy No. 81–03567.**
**Adv. No. 84–0036.**

United States Bankruptcy Court, E.D. Wisconsin.

July 27, 1984.

Cynthia Obremski, Foley & Lardner, Milwaukee, Wis., for defendant.

James L. Adashek, Menomonee Falls, Wis., trustee of plaintiff.

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

JAMES E. SHAPIRO, Bankruptcy Judge.

In this adversary case, the plaintiff, James L. Adashek, trustee for Bob Engler Company, Inc. ("debtor") seeks recovery of an account receivable of the debtor against Wagner Products Division of E.R. Wagner Manufacturing ("defendant") for labor and services allegedly provided.

A trial was conducted before this Court on June 14, 1984. The plaintiff appeared *pro se*, and the defendant appeared by Cynthia Obremski of Foley & Lardner.[1]

Based upon the testimony and documents received into evidence, and after considering the post-trial written arguments of counsel, this Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. On November 17, 1981, the debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Thereafter, by order of this Court dated August 30, 1983, the Chapter 11 proceeding was converted to a Chapter 7 proceeding, and James L. Adashek was appointed trustee.

2. The debtor is a Wisconsin corporation. Its business activities included the installation of heating, ventilating and air conditioning equipment and process piping. Its offices were formerly located in Horicon, Wisconsin.

3. The defendant is a Wisconsin corporation engaged in the business of metal fabricating with its offices located at P.O. Box 405, Hustisford, Wisconsin.

4. In accordance with purchase order NP 6573 dated February 14, 1980, the debtor performed certain services and provided materials in connection with a rubber wheel molding project of the defendant. The precise nature of the services and materials involved are more fully set forth in the purchase order. However, in general, they included the installation of process piping and a boiler.

5. In accordance with a subsequent purchase order NP 6641 dated May 29, 1980,

---

1. Both parties have consented to the entry of an order by this Court, in accordance with paragraph (d)(3)(B) of the order adopting the emergency rule regarding bankruptcy cases and proceedings signed on April 2, 1984 by the United States District Court for the Eastern District of Wisconsin and thereafter extended to June 20, 1984 by its further order dated May 25, 1984.

the debtor installed for the defendant a high pressure boiler to enable the defendant to obtain a higher temperature for the curing of the rubber on the rubber wheel molding project.

6. Thereafter, a dispute arose between the parties. The debtor contends that it had incurred 128 hours of additional labor charges performed during the period June 1, 1980 through February 3, 1981 for work in connection with the original purchase order NP 6573, and that these charges, together with material charges totalling $102.60 for the installation of a steam relief valve, remain unpaid. The defendant contends that the original purchase order NP 6573 had been closed out and was superseded by purchase order NP 6641, and that there was "double billing" by the debtor for these disputed 128 hours which defendant contends had been paid as part of its billing under subsequent purchase order NP 6641.

7. The testimony, particularly that of Margaret Engler, a vice president of the debtor who had been in charge of the debtor's books and records since 1951, persuades this Court that the disputed 128 hours of labor charges were in fact incurred by the debtor for the benefit of the defendant and were never paid. With respect to the procedure for recording the labor charges on the debtor's books, it was established by Mrs. Engler that accurate accounting procedures were maintained and that there was no "double billing". This Court has had an opportunity to observe Mrs. Engler's demeanor. It is satisfied as to her credibility and that no falsification of the debtor's books and records took place. In reaching this conclusion, the Court does not mean to imply that the testimony of the defendant's witnesses, namely, Kenneth Krieps, a vice president and project manager for the defendant, and Kenneth Buchta, a former employee of the debtor who had worked on this particular project for the defendant, was not credible. Their testimony, however, was mainly circumstantial and based upon speculation. It neither refuted the legitimacy of the 128 hours of labor charges in question nor that these charges were unpaid. The only apparent conflict in the testimony occurred between Mr. Buchta and Mrs. Engler regarding written time slips which may or may not have been submitted by Mr. Buchta in connection with purchase order NP 6573. The procedure for reporting the hours worked on a particular job was explained by Mr. Buchta. He stated that these hours would be phoned into the office or, alternatively, if the worker was at or near the office, he would transmit this information by written time slips or by orally conveying this information to Mrs. Engler or to her assistant. However, at the trial, Mr. Buchta was unable to dispute the accuracy of the debtor's time records received into evidence, was unable to produce copies of any time slips which he might have prepared and did not affirmatively assert that he turned over any time slips for purchase order NP 6573. He acknowledged that more than four years had elapsed since work was commenced on this particular project. Mrs. Engler, on the other hand, testified that no time slips were ever submitted by Mr. Buchta for this particular purchase order.

8. In a final pre-trial report filed with this Court, the defendant acknowledged that the plaintiff is entitled to payment for a material charge covering a steam relief valve in the sum of $102.60.

9. The debtor did not submit a statement for the 128 hours of unpaid labor until May 1, 1981, approximately one year after the time which defendant thought the work had been completed and closed out. Although this may have been enough to raise suspicion on the part of the defendant, Mrs. Engler explained that it was the debtor's policy to hold off from billing a job when it had neared completion. In this instance, however, the debtor encountered unanticipated problems which resulted in a delay in completion. She also stated that another reason for the delay in billing was because she had been working with the

defendant's accountant at that particular time and simply did not have the time to prepare invoices.

10. If regular monthly billings had been processed and if appointments which were made by the parties with each other to discuss their misunderstanding had been kept, the ensuing litigation and hard feelings generated between the parties might have been avoided. The Court is, nevertheless, satisfied as to the propriety of the charges in question and finds that the total charge for the 128 hours of labor was $3,328.60, together with a material charge of $120.60 for a steam relief valve, for a combined total of $3,431.20.

11. The defendant has also established that it is entitled to a credit in the sum of $204.33 with respect to materials returned by it to the debtor.

## CONCLUSIONS OF LAW

Plaintiff is entitled to recover from defendant $3,328.60 for unpaid labor charges, and $102.60 for an unpaid material charge for a steam relief valve in a combined sum of $3,431.20.[2] The defendant is entitled to a credit against this sum of $274.33 for the return of materials by the defendant to the debtor. This results in a net amount due to the plaintiff from the defendant of $3,146.87.

## ORDER FOR JUDGMENT

Based upon the foregoing findings of fact and conclusions of law,

IT IS ORDERED that plaintiff is entitled to judgment against the defendant in the sum of $3,146.87 (after deducting the credit of $274.33 due to the defendant) together with interest from and after entry of this judgment at the rate of twelve per cent (12%) per annum.

2. Although the Court notes that plaintiff, in its post-trial written argument to the Court, contends a balance was due for material charges in the sum of $293.86, the only evidence submitted at the trial for the material charges was for the

steam relief valve in the sum of $102.60. Because nothing with respect to any other material charges was introduced into the record, they are disallowed.