In re **MAINSTREAM ACCESS, INC., Debtor.**

**Bankruptcy No. 89 B 12089.**

United States Bankruptcy Court, S.D. New York.

Oct. 4, 1991.

Henry J. Bergman, of counsel, Bachner, Tally, Polevoy & Misher, New York City, for Rockefeller Center Properties (landlord).

John R. Brecker, Angel & Frankel, P.C., New York City, for Mainstream Access, Inc. (debtor).

## MEMORANDUM OF DECISION ON OBJECTION TO ADMINISTRATIVE EXPENSE CLAIM

FRANCIS G. CONRAD, Bankruptcy Judge, Sitting by Special Designation.

Debtor asks us to disallow [1] entirely the claim of its former landlord, Rockefeller Center Properties, for an administrative expense for rent accrued between Oct. 17, 1989, the date Debtor's lease was deemed rejected, and March 22, 1990, the date personal property of Debtor was deemed abandoned to Landlord. Landlord's administrative expense claim is for $297,231.13, plus attorneys' fees and interest on the attorneys' fees. Debtor also asks that the security deposit held by Landlord be applied first to any allowed administrative expense.

Landlord argues that the entire security deposit should be allocated to its claim for damages arising from rejection of the

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this Court, dated July 10, 1984 (Ward, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed. R.Civ.P. 52, as made applicable by Fed. R.Bkrtcy.P. 7052.

Lease, and that Debtor should pay its administrative expense claim as part of its Plan. Debtor has not objected to Landlord's claim that $549,691 is due for lease rejection damages under 11 U.S.C. § 502(b)(6)(A). We disallow the administrative expense claim, and thus moot the issue of how to apply the deposit.

Landlord leased to Debtor commercial space on the 28th floor of 1270 Avenue of the Americas by agreement dated Feb. 23, 1989. The term was for ten years, commencing April 1, 1989. The first six months, April through September, were rent free. As required by the Lease, Debtor paid Landlord its first month's rent of $30,716.20, in advance. Debtor also provided a security deposit of $92,148.50, which represented three month's rent.

Debtor equipped its leased space with furnishings and fixtures that cost about $250,000, which it acquired on a capital lease with Circle Credit Corp. (Circle). In addition, Debtor made about $50,000 in premise improvements. Debtor admits it has no equity in the personal property. Circle failed to perfect its security interest in the furnishings and fixtures, elevating to first position a $500,000 second lien held by Chase Manhattan Bank in the furnishings and fixtures. Chase was paid off by Regional Financial Enterprises, III, Inc. (RFE), which received an assignment of Chase's lien. RFE is one of Debtor's secured creditors and stockholders.

Debtor filed its petition for relief on August 17, 1989. Its telephone service to the leased premises was terminated on Sept. 15, 1989, after which time Debtor's employees ceased to use the premises for the conduct of their business. No action either to assume or reject the Lease was taken by Debtor within the first 60 days after filing. Accordingly, the Lease is deemed rejected by operation of 11 U.S.C. § 365(d)(4)[2] on Oct. 17, 1989, the 61st day after filing.

Debtor's six-month rent free period ended Sept. 30. Debtor's pre-paid first-month's rent covered the month of October. Upon rejection, Debtor had an obligation, imposed by § 365(d)(4) to "immediately surrender" the premises to Landlord. Debtor's leased furnishings and equipment were still on Landlord's property on Oct. 17, 1989. Article 19 of the Lease governs the parties' rights to personalty remaining on the leasehold after termination:

> Any personal property which shall remain in any part of the premises after the expiration or termination of the term of this Lease with respect to such part shall be deemed to have been abandoned, and either may be retained by the Landlord as its property or may be disposed of in such manner as the Landlord may see fit; provided, however, that, notwithstanding the foregoing, the Tenant will, upon request of the Landlord made not later than 30 days after expiration or termination of the term hereof with respect to such part of the premises, promptly remove from the Building any such personal property.

Landlord did not ask Debtor to remove its personalty within 30 days after termination of the Lease, as it could have done under Article 19. Rather, Landlord frustrated Debtor's efforts to remove or dispose of the personal property. Debtor's counsel contacted the attorney who served as Landlord's real estate broker by telephone to discuss removal of the personal property on Nov. 1, 1989. Debtor's counsel followed the telephone conversation with a letter to Landlord's real estate broker, dated Nov. 2, 1989, which recited understandings believed to have been reached the previous day.

> [I]t was agreed that [Debtor] can remove the personal property ... during normal business hours using elevators that are available. [D]ebtor will not be able to reserve a freight elevator, but will be allowed to use the same at any time that such is not in service.

---

**2.** "[I]f the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor." 11 U.S.C. § 365(d)(4).

Landlord's broker, in a letter of response dated Nov. 8, 1989, "disclaim(ed) everything" attributed to him in the Nov. 2 letter from Debtor's counsel, "on the ground that I do not represent your client's landlord." The broker pointedly linked payment of rent, now due for November, to removal of Debtor's personalty.

> Permit me ... to point out to you that the sum of $32,374.47 is due and owing in post-bankruptcy charges and that it would be foolish for you or your client to expect cooperation in removing valuable fixtures from the premises while that sum remains unpaid.

Debtor, on behalf of RFE, filed an omnibus application on Feb. 8, 1990, seeking authority to sell the personal property out of the ordinary course of business by an auction on the leased premises, and to deliver the net proceeds of the sale to RFE. Debtor also asked the Court to determine that Circle's secured claim was worthless. Landlord opposed the application for authority to dispose of the assets, arguing (1) that it was entitled to the property because Debtor had abandoned it; (2) Article 3 of the Lease expressly prohibits "an auction of any kind;" and (3) Debtor had failed to pay for its use and occupation of Landlord's premises from termination of the Lease upon rejection through the date of the proposed sale.

Bankruptcy Judge Buschman, by order dated March 8, 1990, ruled that all requirements of §§ 363(b)[3] and (f),[4] which govern sale of property of the estate, had been met, and that "sufficient circumstances and good business judgment exists (sic) in this case to justify approval of the auction sale sought in the application." Approval was carefully conditioned, however, to address the objections raised by Landlord. Paragraph 4 of Judge Buschman's order provided:

> The Debtor may not conduct an auction sale of the Furniture at the Premises unless it receives the prior permission of the Landlord. The Debtor and RFE shall remove the Furniture from the Premises not later than fourteen days after the date of this order, shall give the Landlord 48 hours advance notice of such removal; RFE or the Debtor, if reimbursed by RFE pursuant to 11 USC § 506(c), shall pay in advance all freight elevator costs and procure moving insurance in an amount satisfactory to the Landlord and the Debtor, if reimbursed by RFE pursuant to 11 USC § 506(c), shall forthwith pay for the value of its use and occupation of the Premises through the date of such removal from the proceeds of any sale of the Furniture. All property left in the Premises after the date by which the Furniture must be removed therefrom shall be deemed abandoned to the Landlord free of all liens.

Judge Buschman also ruled that Circle's claim was unsecured. The property was neither auctioned nor removed from the premises, but was abandoned to Landlord after passage of the 14–day period established by Judge Buschman.

Landlord now seeks allowance of $297,231.13, plus attorneys' fees and subsequently accruing interest, as an administrative expense under 11 USC § 503[5], for the

---

**3.** Section 363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

**4.** Section 363(f) provides: "The trustee may sell property under subsection (b) ... of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."

**5.** 11 U.S.C. § 503 provides, in pertinent part, that:

(a) An entity may file a request for payment of an administrative expense.
(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

period between Oct. 17, 1989 and March 22, 1990. This sum represents the total of pro-rated rent and related charges, and interest and attorneys' fees already accrued. Landlord claims an additional $549,691 in lease rejection damages for the period after March 22, 1990.

Allowance of the administrative expense claim under § 503(b)(1) would entitle Landlord to a first priority for payment under 11 U.S.C. § 507(a)(1),[6] and enable it, under 11 U.S.C. § 1129(a)(9)(A)[7], to compel this Chapter 11 debtor to pay the claim in full. Landlord seeks to maximize the cash it receives by applying the $92,148.50 security deposit to lease rejection damages.

Debtor argues that the administrative expense claim should be disallowed in its entirety, because the estate derived no benefit from the leased premises during the period at issue. To the extent that the administrative expense claim is allowed, Debtor argues that it should be reduced by the amount of its deposit. Landlord argues that Debtor's objection to its administrative expense claim is barred by the doctrine of *res judicata*, because Judge Buschman's March 8 order, which was not appealed from, is a final order conclusively establishing its right to payment for Debtor's use of the premises.

■ Landlord's *res judicata* argument leaks profusely. Under the doctrine of *res judicata*, "a valid, final judgment ... constitutes an estoppel, between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim in the subsequent action is different." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Prac-*

*tice* 0.405[1], at 178 (2d ed. 1991). *See, e.g., In re Republic Fabricators, Inc.,* 104 B.R. 933, 948–50 (Bkrtcy.N.D.Ind.1989). Paragraph 7 of Judge Buschman's order retained "jurisdiction with regard to any and all disputes that may arise relating to or connected with the proposed auction sale of the Furniture authorized or any other provision of this order." The order is, by its own terms, not final, so the doctrine of *res judicata* does not apply.

■ Not only was Judge Buschman's order not final, it did not, in fact, order Debtor to pay for its post-rejection use and occupation of the premises. Rather, the substantive effect of the order was to authorize Debtor to pay for the *value* of its use and occupation if, and only if, it had value. Paragraph 4 ordered that "the Debtor, if reimbursed by RFE pursuant to 11 U.S.C. § 506(c), shall forthwith pay for the value of its use and occupation of the premises through the date of such removal from the proceeds of any sale of the Furniture." (Emphasis added). The underlined phrase was a handwritten insertion to a typed document. Section 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Judge Buschman did not order Debtor to pay Landlord its pro-rata rent, but the "value of its use and occupation," which could only be determined after the furnishings were either liberated from or reverted to Landlord. Debtor was ordered to pay Landlord only if it was reimbursed by RFE.

---

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case....

6. 11 U.S.C. § 507(a)(1) provides, in pertinent part:

(a) The following expenses and claims have priority in the following order:

(1) First, administrative expenses allowed under section 503(b) of this title....

7. 11 U.S.C. § 1129(a)(9)(A) provides, in pertinent part:

(a) The court shall confirm a plan only if all of the following requirements are met:

....

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) ..., on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim.

The reference to § 506(c) limits RFE's responsibility to "the extent of any benefit" it received from having its collateral occupy Debtor's former leasehold, which could only be determined after the furniture had either been sold or turned over to Landlord.

A more fundamental problem for Landlord is that it is not at all clear from Judge Buschman's order that it was Debtor's furniture that was occupying the premises. Indeed, the relief granted in the order is based on the underlying premise that title to the property is disputed and unresolved. When the parties appeared before Judge Buschman, Debtor had no equity in the property, nor plans to use it in its reorganization, but was seeking to salvage what it could for the benefit of RFE, the secured lienholder. Landlord was arguing against an auction on the grounds that it owned the property, because Article 19 of the Lease provided that property remaining after termination of the Lease was abandoned to Landlord. Facing conflicting claims to the personal property, Judge Buschman ruled that "[a]ll requirements of Sections 363(b) and (f) of the Bankruptcy Code for the sale of the certain property, equipment and collateral ... that was the subject of the Leasing Agreement ... between the Debtor, as lessee, and Circle as lessor, have been satisfied...." Section 363(b) permits the trustee to sell property of the estate out of the ordinary course of business after notice and a hearing. Section 363(f) permits sale free of the interests of conflicting claimants.

To summarize, Judge Buschman's order was not final, did not require Debtor to pay Landlord the value of post-rejection use and occupancy, did not determine what the value of the use and occupancy was, and did not determine whose possessions were in fact using and occupying Landlord's premises. Accordingly, *res judicata* does not apply, and we have a clean slate on which to write.

■ The filing of Debtor's Chapter 11 petition created a bankruptcy estate, comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

The estate in this case included the personal property left in Landlord's building, as well as Debtor's leasehold interest in the rented space. *In re Tucci*, 47 B.R. 328, 331 (Bkrtcy.E.D.Va.1985). Subject to certain exceptions, the property of a debtor's estate is protected by the automatic stay imposed under 11 U.S.C. § 362(a), even against persons who also have interests in the property.

■ In this case, Debtor had no equity in the property, and no plans to use it in its reorganization. Had it so desired, Landlord could have pursued any one of a number of options to rid itself of Debtor and Debtor's property. First, Landlord could have moved as soon as Debtor commenced this proceeding for an order requiring Debtor to assume or reject immediately. *See, e.g., In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879 (Bkrtcy. E.D.N.Y.1986) (Debtor filed May, 16; Landlord moved on June 9 to require Debtor to determine immediately whether it intended to assume or reject lease.). Second, when Debtor did attempt to arrange to move its property on Nov. 1, 1989, Landlord could have allowed Debtor to do so, and then filed an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1). A third possibility is based on Article 19 of the Lease, which required Debtor to remove all property on request of Landlord. Prior to rejection of the Lease by operation of law on Oct. 17, 1989, Landlord could have, but did not, request that the property be removed. Such a request made pre-rejection would have created in this debtor-in-possession a duty to "timely perform all the obligations of the debtor ... under [the] unexpired lease of nonresidential real property." 11 U.S.C. § 365(d)(3). A fourth option was to move for relief from the stay to take possession of the premises and the personalty that remained thereon. *Zagata Fabricators v. Superior Air Products*, 893 F.2d 624, 627 (3d Cir.1990). Fifth, Landlord could have moved for an order requiring the property to be abandoned. "Property that is burdensome to the estate ... may be aban-

doned pursuant to a motion of the trustee or of any party in interest." *In re Tucci, supra,* 47 B.R. at 331; 11 U.S.C. §§ 554(a), (b).

Landlord took no steps to get Debtor out the door. Rather, what Landlord has done is to hold on tight and demand that Debtor pay for a dance it tried to avoid. Debtor has in fact paid for the 60 days between its filing on Aug. 17, 1989, and rejection of the Lease by operation of § 365(d)(4) on Oct. 17, 1989. Indeed, the combination of six-month's free rent and the pre-paid first-month's rent took Debtor past the rejection date and through the end of October.

The Code's requirement that Debtor "timely perform all [its] obligations" under the Lease expires upon rejection of the Lease. 11 U.S.C. § 365(d)(3). "After rejection of the lease, the payment of an administrative claim for rent, like all other administrative claims is within the sound discretion of the bankruptcy court and should be determined under section 503." *In re Orvco, Inc.,* 95 B.R. 724, 728 (9th Cir. BAP 1989). *See also, In re Patella,* 102 B.R. 223, 225 (Bkrtcy.D.N.M.1989) ("[W]hen a lease is deemed rejected, a lessor must establish its claim for administrative status under section 503(b)(1)(A)"); *In re Coastal Dry Dock & Repair Corp., supra,* 62 B.R. at 883 ("the normal standards for administrative expense claims under 11 U.S.C. § 503(b)(1)" apply after lease is rejected.). Section 503(b)(1)(A) provides:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case[.]

"The language of § 503 continues the long-standing rule under the former Bankruptcy Act that a creditor's right to payment will be afforded priority only to the extent the estate was benefited in fact from the consideration supporting the creditor's claim." *In re Carmichael,* 109 B.R. 849, 851 (Bkrtcy.N.D.Ill.1990) (*citing, American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.,* 280 F.2d 119 (2d Cir.1960)). "The use of the terms 'actual' and 'necessary' were not accidental but were included to impose the requirement that the estate is *actually* benefited." *In re Carmichael, supra,* 109 B.R. at 851. (Emphasis added). *See also, In re Subscription Television of Greater Atlanta, supra,* 789 F.2d 1530, 1532 (11th Cir.1986); *Kinnan & Kinnan Partnership v. Agristor Leasing,* 116 B.R. 162, 165 (D.Neb.1990).

The cases cited by Landlord in support of its argument do not persuade us to adopt a contrary view. *In re Coastal Dry Dock, supra,* 62 B.R. at 882, held that § 365(d)(3) requires "payment of all rents reserved under the lease until the lease is assumed or rejected. The Court noted that "[t]his obligation is made expressly independent of the normal standards for administrative expense claims under 11 U.S.C. § 503(b)(1)." *Id.,* at 883. Here, Debtor has in fact paid the entire lease rent through the date of rejection. Landlord's post-rejection claim is thus governed by the "normal standards" of § 503(b)(1).

*Matter of Fred Sanders Co.,* 22 B.R. 902, 907 (Bkrtcy.E.D.Mich., S.D.1982) also dealt with a creditor's claim for lease payments due prior to rejection of the lease. The Court allowed an administrative claim in the amount of the unpaid lease payments for the year in which a debtor retained three vans, before finally rejecting the leases and returning the vehicles to the creditor. Even assuming the case remains good law,[8] it is not applicable to this post-rejection claim for administrative expenses.

*In re Western Monetary Consultants,* 100 B.R. 545 (D.Col.1989) did involve a claim for administrative expense for the period the debtor retained the premises af-

---

**8.** The Court in *Carmichael, supra,* 109 B.R. 852, n. 2, suggests that *Fred Sanders* may have been "overruled by statute in cases involving personal property leases, because § 365 was amended to require timely performance of the lease on non-residential real property by the debtor until assumed or rejected, notwithstanding § 503. *See,* 11 USC § 365(d)(3)."

ter the lease was deemed rejected. In that case, however, the debtor had received an actual benefit, the value of which was disputed by the parties. *Id.* at 547.

In this case, Debtor received no actual benefit from having its property sit in the leased premises after rejection of the Lease. The only potential for benefit from the outset was in preserving the value of the personal property. The mere potential for benefit to the estate does not satisfy the requirement of § 503(b)(1) that the estate receive an actual benefit. *Kinnan, supra,* 116 B.R. at 166, *citing, Broadcast Corp. of Georgia v. Broadfoot,* 54 B.R. 606, 611 (N.D.Ga.1985). Nor is benefit measured by loss to the creditor, even where the loss is not self-inflicted. "[T]he administrative expense scheme does not focus in the first instance on whether a creditor sustained a loss ... but on whether the estate has received an actual benefit." *Broadcast Corp., supra,* 54 B.R. at 611, *quoted in Kinnan, supra,* 116 B.R. at 166.

Here, Landlord wound up with the personal property, the value of which was the sole source of potential benefit to the estate. No evidence was submitted to establish what that value proved to be upon liquidation by Landlord. We disallow Landlord's claim for an administrative expense for post-rejection damages in its entirety, because Landlord in fact got all the value to be had and the estate got none.

Disallowance of Landlord's claim for an administrative expense moots the issue of how to apply the security deposit. Application of the security deposit to the Landlord's claim for lease rejection damages is clearly appropriate under Article 28 of the Lease, which provides, in part:

The Tenant shall at all times maintain on deposit with the Landlord cash in the amount of $92,148.50 as security for the full and faithful keeping, observance and performance of all of the covenants, agreements, terms, provisions and conditions of this Lease provided to be kept, observed or performed by the Tenant (expressly including, without being limited to, the payment as and when due of the fixed rent, percentage rent, if any,

additional rent and any other sums or damages payable by the Tenant under this Lease) and the payment of any and all other damages for which the Tenant shall be liable by reason of any act or omission contrary to any of said covenants, agreements, terms, provisions or conditions.

Accordingly, we hold that the Landlord's claim for lease rejection damages of $549,691 is secured to the value of the security deposit, and is a general unsecured claim as to the balance.

Counsel for Debtor shall settle an order consistent with this Memorandum of Decision.