## In re MOLTECH POWER SYSTEMS, INC., Debtor.

### No. 01–00335–GVL1.

United States Bankruptcy Court,
N.D. Florida,
Gainesville Division.

Jan. 28, 2002.

Lisa Cohen, Gainesville, FL, for creditor.

Russell Blain, Stichter, Riedel, Blain & Prosser, Tampa, FL, for debtor.

### ORDER DENYING CREDITOR'S APPLICATION FOR PAYMENT OF ADMINISTRATIVE EXPENSE

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS CASE came on for hearing on December 6, 2001 upon the creditor Commercial Utility Econometrics, LLC's (CUE) motion for designation of its claim as an administrative expense claim, and application for payment of same. Debtor Moltech Power Systems, Inc. (MPS) opposed the motion and application. For the reasons stated below, the creditor's claim is not an administrative expense, but is an unsecured claim arising out of a pre-petition obligation of the debtor. The court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B).

### Facts and Procedural History

On March 14, 2001, the debtor entered into a service agreement with CUE, which was subsequently amended on March 16th. Pursuant to the terms of the agreement, CUE was to audit the debtor's utility bills and obtain refunds and future savings for the debtor from the utility companies. The agreement provided that CUE would receive 50% of any future refunds or credits, and 75% of the debtor's first year savings. CUE was to be paid in quarterly installments.

The parties stipulated that as a result of CUE's services, the debtor received a $32,958.12 refund from Florida Power Company. CUE requests immediate payment of $16,479.06 or 50% of the $32,958.12 refund, and 75% of the debtor's eventual first year savings, as called for in the service agreement. The debtor asserts that it received the refund on May 8th, prior to its May 22nd filing of the voluntary petition for relief under Chapter 11. CUE contends that the debtor did not receive credit for this refund until June 5th, subsequent to filing of the bankruptcy petition.

CUE employee Adrienne Burgess testified that CUE began work on behalf of MPS immediately after the contract was signed. CUE performed a utility bill audit of the prior six months. On April 13th, CUE requested a utility bill adjustment relating to the prior six months. When the credit did not show up on the May 4th billing, CUE followed up with the utility company, which advised that the credit had been posted to the account on May 8th and would show up in the June bill. The adjustment was reflected in the June 5th bill from Florida Power to MPS.

The witness testified that CUE did not stop working for MPS on May 8th but continued to perform a re-analysis to verify the accuracy of the May 8th credit. The re-analysis was completed June 14th. CUE also continued to negotiate with Florida Power for additional savings after May 8th. The net result was that instead of owing the utility company more than $136,000.00 as of the May 5th bill, the indebtedness was actually closer to $103,000.00. By the time the petition was filed, MPS owed Florida Power over $181,000.00, which was applied against a $200,00.00 deposit on hand. CUE argues that because the actual benefit in question accrued to the debtor post-petition, this debt should be treated as an administrative claim instead of a general unsecured obligation.[1]

The debtor contends that all of the benefit accrued by May 8th, regardless of when it was actually reflected on the utility bills. On cross-examination, the witness admitted that she could have requested that the credit flow to a revised May, 2001 bill if she had requested same. The witness admitted that the June bill reflected the May credit.

The debtor disputes CUE's assertion that the billing credits and concurrent reduction in sales tax represented an actual and necessary expense of preserving property of the estate. MPS reasons that the credit merely reduced the debtor's prepetition indebtedness to the utility company, and did not change the nature, status, or priority of that debt. The debtor further argues that there was no promise by the post-petition MPS to induce CUE to perform the work on a post-petition basis. All of the work was substantially performed, and the benefit substantially accrued, prior to the May 22nd filing of the petition. As such, MPS asks the Court to deny assigning post-petition administrative expense status to the CUE's billing for the period in question.

### Discussion

Under 11 U.S.C. § 507(a)(1), administrative expenses allowed under section 503(b) of the Code have the first priority for payment. "After notice and a hearing, there shall be allowed administrative expense, including the actual, necessary costs and expenses of preserving the estate, including .... commissions for ser-

---

1. CUE has been paid on a post petition administrative expense basis for work that be- gan after the Chapter 11 petition was filed.

vices rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). "Section 507 of the Bankruptcy Code affords first priority to administrative expenses to encourage the provision of goods and services to the estate, and to compensate those who expend new resources attempting to rehabilitate the estate." *In re Carpet Center Leasing Co., Inc.*, 991 F.2d 682, 685 (11th Cir.1993) (internal citation omitted). "[I]f a reorganization is to succeed, creditors asked to extend credit after the petition is filed must be given priority so they will be moved to furnish the necessary credit to enable the [debtor] to function." *In the Matter of Jartran, Inc.*, 732 F.2d 584, 586 (7th Cir.1984) *citing to In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976).

■ The two part test for determining whether a debt should receive administrative priority requires that the debt both (1) arise from a transaction with the debtor-in-possession, and (2) is beneficial to the debtor-in-possession in the operation of the business. *Jartran* at 586–587.

In *Jartran*, the debtor entered a pre-petition advertising contract where it was irrevocably committed to pay for Yellow Pages advertising several months before the ads were to appear. However, the agreement provided that billing would occur after the ads were published. The petition was filed between the time of the agreement and the time the ads were published. The debtor-in-possession rejected the executory contract four months after filing the petition. The creditors sought administrative expense priority for ads that were published post-petition, as they presumably assisted Jartran in its rehabilitation. *Jartran* at 585–586.

The Seventh Circuit affirmed the District Court, which had affirmed the Bankruptcy Court's holding denying administrative expense priority to the ad billing. The Seventh Circuit held that "it was the pre-petition Jartran and not Jartran as debtor-in-possession that *induced* [the] appellants to perform [the] services. To serve the policy of the priority, inducement of the creditor's performance *by the debtor-in-possession* is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor." *See Id.* at 587 (emphasis in original) *citing Mammoth Mart* at 954.

In this case, the debt arose solely from the pre-petition transaction with the debtor. The contract was executed before the petition was filed. The work that led to the refund was performed before the petition was filed. CUE's records reflect that the refund was owed to the debtor pre-petition. The utility company's transaction that recognized the refund was posted internally prior to the petition date. The debtor was aware of the credit pre-petition. All of these facts negate the allegation that the instant utility bill adjustment arose from a transaction with the post-petition debtor-in-possession.

CUE did not provide any case law in support of its application for administrative expense priority. There is a line of Second Circuit cases interpreting the old Bankruptcy Act that grant a creditor an equitable right to priority payment for benefits received by the debtor "during the interval between the filing of the debtor's petition and the rejection of the [executory] contract." *See American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119, 124 (2nd Cir.1960). That line of cases is inapposite to the facts in the case before us today. Here, the executory contract was not rejected, and the creditor is being separately paid on a post-petition administrative expense priority basis for that portion of the work that was clearly induced and performed post-petition.

There is a recent bankruptcy case from the Middle District of Florida that follows

an offshoot of the Second Circuit logic regarding the timing of rejection or acceptance of executory contracts. In *In re Section 20 Land Group, Ltd.*, 261 B.R. 711 (Bankr.M.D.Fla.2000), the pre-petition entity entered into a contract to hold a major golf tournament on its land. The debtor-in-possession did not reject the executory contract. The marketing entity creditor (IMG) agreed to continue the site preparation and hold the tournament post-petition. The majority of the work was done post-petition, and the tournament was held even though the debtor-in-possession failed to pay an agreed fee to IMG prior to the event, pursuant to the contract.

The *Section 20* Court found that by not rejecting the executory contract, the debtor-in-possession received post-petition benefits, and that a post-event agreement to accept the payment in installments gave new value to the debtor. Judge Paskay held that "[a] debtor may sometimes incur priority expenses under an executory contract even without an express election to assume the [contract], if the bankruptcy estate derives benefit under the contract." 261 B.R. at 716 *citing In re Chateaugay Corp.*, 10 F.3d 944, 945 (2nd Cir.1993).

*Section 20* is also inapposite to the case before this Court. In *Section 20*, the majority of the work was performed post-petition, the debtor received the benefit post-petition, and the contract was reformatted post-petition. All of those facts point to benefits bargained for and received by a post-petition entity. In this case, all of the work was performed pre-petition and the benefit accrued pre-petition. With regard to the billing in question, there is no evidence of a post-petition transaction between CUE and the utility company for MPS' benefit; the mere reporting of the pre-petition benefit in a post-petition billing statement does not create a post-petition benefit.

Having disposed of the first part of the test, a detailed analysis of the second part of the test is unnecessary. Simple deductive reasoning shows that the net effect of the instant transaction was to reduce a pre-petition debt, with no effect on post-petition relations between the debtor-in-possession and the utility company, or between the debtor and CUE.

## Conclusion

MPS as a debtor-in-possession did not induce CUE to perform post-petition services as they relate to the billing period in question. CUE transacted with MPS on a pre-petition basis. The pre-petition transaction did not provide benefit to the debtor-in-possession in the operation of the business going forward, but merely served to reduce a pre-petition debt. Therefore, it is

ORDERED AND ADJUDGED that CUE's application for administrative expense priority and payment of its claim on an administrative expense basis is DENIED.